**In the Matter of Victor C. BUTZ, Patricia Butz, Debtors.**

**UNITED STATES of America, Plaintiff,**

**v.**

**Victor C. BUTZ and Patricia Butz, Defendants.**

**Civ. No. 88–366–A.**

**Bankruptcy No. 87–439–C.**

United States District Court,
S.D. Iowa, C.D.

March 21, 1989.

Kevin R. Query, Asst. U.S. Atty., Des Moines, IA, for plaintiff.

Anita L. Shodeen, Des Moines, IA, Chapter 12 Trustee.

Douglas J. Reed, Des Moines, IA, for defendants.

## RULING ON APPEAL

WOLLE, Chief Judge.

The government, plaintiff here, appeals an order of the bankruptcy court dated April 27, 1988, approving the debtors' plan of reorganization under which the government agency, Farmers Home Administration (FmHA), would not receive benefits derived from the debtors' participation in two government farm programs—the Conservation Reserve Program (CRP) and Feed Grain Program—administered by the Agricultural Stabilization and Conservation Service (ASCS). The debtors filed a petition for reorganization of their farming business on February 20, 1987. Both before and after that date, they were qualified for Feed Grain Program payments. In addition, their application to participate in the CRP was accepted on September 29, 1986, and they thereby were entitled to receive annual CRP payments from ASCS, based on enrolled acres, in the sum of $17,906, in addition to a cost-share payment of $4,374 to defray seeding and fertilizing costs. Under the reorganization plan approved by the bankruptcy court, the government's secured claim was fixed at $102,-500. But the bankruptcy court rejected the government's claim to a share of the ASCS program payments, concluding: (1) the payments were not "rents, issues, and profits" as described in the mortgage executed by the debtors; (2) the payments were not assignable in any event; and (3) setoff was not permissible because the ASCS and FmHA had different missions, separate budgets and staffs, and provided different services.

This court adopts the facts set forth in the bankruptcy court's ruling. *In re Butz,* 86 B.R. 595, 596–97 (Bankr.S.D.Iowa 1988). This court concludes, however, that the order approving the plan of reorganization must be reversed and this case remanded for further proceedings, because the record demonstrates mutuality of obligation between ASCS and FmHA entitling FmHA to have its right of setoff taken into account in the reorganization.

1. *Government Payments as Rent.* Without question FmHA holds a valid, pre-petition mortgage interest in the real estate the debtors were purchasing. The government contends that the payments the debtors received for participation

in ASCS programs constitute "rents, issues, and profits" within the meaning of that phrase in its mortgage.

The bankruptcy court determined that the government payments represented benefits derived from a third-party contractual relationship between the government and the producer, therefore that contract was personal to the producer and not the equivalent of rent or profit from the land. The court relied on *In re Halls*, 79 B.R. 417 (Bankr.S.D.Iowa 1987). That *Halls* decision was contrary to several other decisions of bankruptcy courts. *See In re Waters*, 83 B.R. 594 (Bankr.N.D.Iowa 1988); *In re Arnold*, 88 B.R. 917 (Bankr.N.D.Iowa 1988); *In re George*, 85 B.R. 133 (Bankr. D.Kan.1988).

This court concludes that the ASCS program payments were not "rents, issues, and profits" on which the government had a lien interest. The language of the FmHA mortgage was not sufficiently explicit to reach these government program payments. In a recent decision of the Court of Appeals for the Eighth Circuit, *Kingsley v. First American Bank of Casselton*, 865 F.2d 975 (8th Cir.1989), the court determined that farm deficiency and diversion payments under federal price support and product adjustment programs are not "proceeds" of crops within the meaning of the standardized language the bank had selected for its forms. The court wrote:

> The complex issues before us arise primarily because the highly specific definitions governing federal farm payment programs are drawn with entirely different considerations in mind than those that prompted the drafting of the U.C.C. In essence, we are presented with the challenge of attempting to locate some rational relationship between the differing definitional structures. We understand that banks and other creditors prefer to use preprinted forms based on the language of the U.C.C. because this simplifies their operations. We must compare the language in those forms with the language of the changing government farm programs, as we have here attempted to do. We are satisfied that when the farmer sits at the table with his banker to obtain a loan, both know about the farm support programs and the particular terminology current at that time. If the banker desires a security interest in such programs, it is a simple matter for those definitional terms to be used. All parties would then clearly understand what is intended. When it is necessary that we attempt to compare the statutory language of the U.C.C. with the changing nature of the farm programs and the language utilized there, the difficult problems we have faced in this case present themselves and it is evident that the results are less predictable. This, of course, is only to suggest that carefully tailored documents have benefits over very general ones, but here the benefits in the long run to all concerned might be considerable.

*Id.* at 981.

Applying the same rationale used in *Kingsley*, this court concludes that the bankruptcy court here correctly held that the ASCS program payments were not covered by the "rents, issues, and profits" language of the FmHA mortgage.

2. *Assignability of ASCS Program Payments.* This court's decision on the first issue here presented moots the question of assignability. The court therefore need not address and does not decide whether the bankruptcy court's ruling can be squared with another recent decision of the Court of Appeals for the Eighth Circuit, *In re Sunberg*, 729 F.2d 561 (8th Cir.1984), where the court decided that anti-assignment regulations "are intended to insulate the government as benefit provider from conflicting claims over payments, not to preempt state commercial law as between third parties." *Id.* at 563.

3. *Offset of Program Payments Against FmHA Debts.* FmHA, in the alternative, sought to obtain an interest in the ASCS program payments pursuant to 11 United States Code section 553(a):

> [T]his title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case

**544**

under this title against a claim of such creditor against the debtor that arose before the commencement of the case....

The bankruptcy court held, however, that the FmHA did not stand "in the same capacity" as the ASCS for purposes of section 553(a). *Butz,* 86 B.R. at 602.

 This court concludes, contrary to the bankruptcy court's ruling, that federal agencies are not separate legal entities within the meaning of section 553(a). A federal agency owed money by a debtor may, pursuant to that statute (and subject to the statutory exceptions or pertinent equitable considerations), obtain by offset the payments another federal agency owes to the debtor. The court agrees with and adopts here the reasoning of Chief Judge Porter of the United States District Court for the District of South Dakota in *United States v. Rinehart,* 88 B.R. 1014 (D.S.D. 1988). All federal agencies are an integral part of the federal government and entitled to settled statutory priority in collecting on loans made from government funds. *See Small Business Administration v. McClellan,* 364 U.S. 446, 450, 81 S.Ct. 191, 195, 5 L.Ed.2d 200 (1960).

 There may be other reasons why FmHA should not be allowed to exercise its setoff rights, and any such issues should first be addressed by the bankruptcy court. On the present record, however, this case must be reversed and remanded to the bankruptcy court for further proceedings, because the bankruptcy court did not take into account the government's rights of setoff before approving the debtors' plan of reorganization.

The order of the bankruptcy court approving the plan of reorganization is reversed, and this case is remanded for further proceedings.

IT IS SO ORDERED.