In re PYRAMID INDUSTRIES, INC., Debtor.

UNITED STATES of America, Plaintiff,

v.

Andrew MAXWELL, not individually, but as Trustee of the Estate of Pyramid Industries, Inc.; Affiliated Bank; All American Corporation; Art Drapery Studios Corporation; Butler Street Foundry & Iron; Chicago Builders & Erectors, Inc.; Columbia Pipe & Supply Company; Construction Specialties, Inc.; Contractors Acoustical Supply; Diversified Insulation; Douglass & Company; Gerson Electric Construction Co.; Gilead–Angelo Construction; Harold A. Schweig Company, Inc.; The Lazzaro Companies, Inc.; Martin Cement Company; Municipal Funding, Inc.; Southwest Financial Bank; Vesta Distributors, Inc.; WLW & Associates; and Nonrecord Claimants, Defendants.

Bankruptcy No. 89 B 15373.
Adv. No. 93 A 1025.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

July 22, 1994.

Joel Nathan, Asst. U.S. Atty., Chicago, IL, for U.S.

Robert Samko, Chicago, IL, for All American Corp.

Peter Swan, Highland Park, IL, for Gerson Elec. Const. Co.

Kurt Muller, Chicago, IL, for The Lazzaro Companies, Inc.

## MEMORANDUM OPINION

DAVID H. COAR, Bankruptcy Judge.

This matter comes before the Court on the motion of the United States, on behalf of the Small Business Administration ("SBA"), for summary judgment on its Complaint to Determine the Extent, Validity and Priority of Liens and Interest in Property of the Estate. The Court has core jurisdiction pursuant to 28 U.S.C. §§ 157(b)(2)(K) and 1334. Upon consideration of the pleadings, memorandum and other supporting documents submitted by the parties, the Court now issues Findings of Fact and Conclusions of Law.

## BACKGROUND

The interests at issue in this proceeding arise out of a contract between the Debtor, Pyramid Industries, Inc. ("Pyramid"), and the United States Navy entered into on September 17, 1987, contract # N62472–84–C–0517 ("Prime Contract"). Pyramid was to perform work as the general contractor at the Glenview Naval Air Station in Glenview, Illinois. Upon completion of the project, a dispute arose between Pyramid and the Navy regarding the final balance due. Although Pyramid maintained that it was owed $55,000.00, its claim was eventually settled for $51,050.00. The Court approved this compromise in a February 27, 1990 order which stated that "all liens, claim [sic] and encumbrances asserted against the [Prime Contract] shall be transferred to and attach to the proceeds of the [Prime Contract] collected by Trustee, subject to further order of court."

The Prime Contract required Pyramid to provide payment and performance surety bonds, which could be posted by individual sureties. Pyramid submitted A.G. Merklinger ("Merklinger") and William Reeves ("Reeves") as individual sureties. Merklinger and Reeves provided affidavits indicating their financial positions, but they did not post the requisite bonds. Merklinger filed for bankruptcy on June 1, 1990 claiming that he had no assets. The assets appearing on

Reeves' affidavit were subsequently found to be non-existent at the time of execution and at all times thereafter.

Pyramid filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code on September 14, 1989. The case was converted to chapter 7 on October 30, 1989. Andrew Maxwell ("Maxwell") is the duly appointed chapter 7 trustee. The sum of $51,050.00 in proceeds from the Prime Contract ("Proceeds") is among the assets of Pyramid's estate.

The SBA holds a lien claim against Pyramid for $590,574.88 arising out of loans extended to Pyramid to perform the Prime Contract. SBA's interest is evidenced by three notes made by Pyramid (or one of its predecessors) in the amounts of $309,140.25, $47,171.33 and $240,316.30. The notes were made on July 2, 1984, August 22, 1988 and July 3, 1989, respectively. Each note is secured in part by a perfected security interest in Pyramid's accounts, instruments, chattel paper, general intangibles, and proceeds therefrom.

All American Corporation ("All American") was the drywall, painting and decorating subcontractor for the Prime Contract pursuant to two separate agreements with Pyramid: a July 19, 1988 contract for $19,600.00 and an October 26, 1988 contract for $25,000.00. After necessary additional work was performed, the balance due was $54,814.71. All American has received no payments for its work. Thus All American holds an unsecured claim for $54,817.71 as one of Pyramid's subcontractors under the Prime Contract.

The Lazzaro Companies, Inc. ("Lazzaro") similarly asserts an unsecured claim as a subcontractor in the amount of $27,956.00. The claim is evidenced by an unsatisfied judgment in that amount entered against Pyramid, Merklinger and Reeves by the Circuit Court of Cook County, Illinois on April 20, 1990. Lazzaro has received no payments for its work, and therefore holds an unsecured claim against Pyramid for $27,956.00.

On November 13, 1987, Gerson Electric Construction Company ("Gerson") entered into a contract with Pyramid to provide electrical construction labor and materials at the Naval Station for a base contract price of $181,200.00. Gerson has fully performed its work under the subcontract, and it has received $85,991.50 in payments from Pyramid. Gerson has not yet received the $95,208.50 balance. When Pyramid filed for bankruptcy, Gerson made an unsuccessful claim against the sureties for payment. Gerson asserts a secured claim against Pyramid for $95,208.56 as a subcontractor under the Prime Contract.[1]

On or around August 13, 1993, the United States (on behalf of the SBA) filed a complaint to determine the extent, validity and priority of liens and interests in Pyramid's estate. The following parties were named as defendants: Maxwell, as trustee of the Debtor's estate; Affiliated Bank; All American; Art Drapery Studios Corp.; Butler Street Foundry & Iron; Chicago Builders & Erectors, Inc.; Columbia Pipe & Supply Co.; Construction Specialties, Inc.; Contractors Acoustical Supply; Diversified Insulation; Douglass & Co.; Gerson; Gilead–Angelo Construction; Harold A. Schweig Co., Inc.; Lazzaro; Martin Cement Co.; Municipal Funding, Inc.; Southwest Financial Bank; Vesta Distributors, Inc.; WLW & Assocs.; and nonrecord claimants. The complaint alleged that the interests of these defendants are junior, inferior and subordinate to those of the SBA. Therefore, the SBA sought declaratory judgment that its interest in the Proceeds is superior to those of the defendants. Maxwell, All American, Gerson and Lazzaro filed answers to the complaint.[2] All American, Gerson and Lazzaro (collectively, the "Defendants") deny that their equitable interest in the Proceeds are junior, inferior or subordinate to those of the federal government and the SBA. Maxwell admits the amounts due under the Prime Contract for each of the defendants named in the complaint, admits that each of the defendants has some interest in the Proceeds, and denies

---

1. Whether Gerson's claim is, in fact, secured is not at issue in this proceeding.

2. A default judgment was entered against the remaining defendants on October 15, 1993 for failure to appear in this adversary proceeding.

that his interest is subordinate to that of the SBA.

The United States on behalf of the SBA now moves for summary judgment on its declaratory judgment complaint with respect to the Defendants.[3]

## STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions and affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56, incorporated by reference by Fed.R.Bankr.P. 7056; *Wainwright Bank & Trust Co. v. Railroadmens Fed. Sav. & Loan Ass'n of Indianapolis*, 806 F.2d 146, 149 (7th Cir.1986). The movant has the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The primary inquiry is whether the evidence presents a sufficient disagreement to require a trial, or whether it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). If the moving party meets this burden, the non-moving party must then respond by setting forth specific facts which demonstrate the existence of a genuine issue for trial. Fed. R.Civ.P. 56(e); *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.1983).

## CONCLUSIONS OF LAW

The SBA maintains, and the Defendants do not contest, that it has a perfected security interest in the Proceeds. The SBA also argues that the Defendants do not have a perfected interest in the Proceeds; rather, they are general unsecured creditors of Pyramid. Therefore, the SBA reasons that if the Defendants have an equitable interest in the Proceeds, those interests are subordinate to those of the SBA. Finally, the SBA claims that it may step into the shoes of the

Navy because they are both government entities and that it has the right to setoff against the proceeds pursuant to § 553 of the Bankruptcy Code.

All American and Gerson filed separate answers to the motion for summary judgment as well as memoranda in support of their positions. All American's brief expressly adopted the arguments set forth in Gerson's memorandum and presented additional arguments. Although Lazzaro did not file a separate memorandum in response to the SBA's summary judgment motion, the Court will assume that it adopts the arguments articulated in All American's and Gerson's memoranda.[4] The Defendants essentially assert that their interests in the Proceeds are superior to those of the SBA pursuant to the Miller Act, third party beneficiary principles, and equitable liens.

### A. Priority of Claimants to Contract Proceeds

In order to determine the relative priorities of the SBA and the Defendants to the Proceeds, the Court must attempt to navigate a thicket of public construction cases dating back almost a century. The exercise begins with *Prairie State Nat'l Bank of Chicago v. United States*, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412 (1896), which involved a dispute regarding the ownership of a portion of contract payments withheld by the federal government. Sundberg, the general contractor, obtained a performance bond from a surety, then borrowed funds from a bank to complete the project and assigned the contract proceeds to the bank as security for the loan. Sundberg defaulted on its agreement with the government, thereby requiring the surety to complete the contract. The surety claimed priority to the retained funds pursuant to the suretyship agreement. The bank claimed priority as an assignee with an equitable lien on the unpaid contract price. The Court held that the suretyship agreement allowed the surety to be subrogated to Sundberg's rights. Further, by completing the contract, the surety was also entitled to be

---

3. The motion for summary judgment does not apply to Maxwell as trustee.

4. For convenience, the Court will treat the arguments advanced by a single Defendant as if it were made by each of the Defendants.

subrogated to the United States' rights, including rights in the retained percentage since the purpose of retainage is as much to indemnify the surety as to protect the government from a breach of contract. Although the bank advanced funds so that Sundberg could perform the contract, the Court concluded that the bank did so voluntarily, and not due to any prior contractual obligation (such as a suretyship agreement) to Sundberg. Thus the bank was not entitled to subrogation. The subsequent assignment by Sundberg could not alter the surety's rights; it could only transfer the rights that Sundberg retained. Accordingly, the Court held that the rights of a performance bond surety who completes a government contract are superior to those of a general contractor's assignee with respect to the portion of the contract proceeds retained by the government.

*Henningsen v. United States Fidelity & Guar. Co.*, 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547 (1908), extended *Prairie State* to payment bonds. There, the general contractor performed the contract but failed to pay the laborers and materialmen, thereby forcing the surety to pay the amount of the bond. As in *Prairie State*, the general contractor assigned its right to receive the contract proceeds to a bank in exchange for a loan. The surety sought to recover the proceeds ahead of the bank. The Court held that the bank was not entitled to be subrogated to the rights of either the federal government or the laborers and suppliers on the basis of its loan to the general contractor. Further, if the surety is subrogated to the rights of the government, the bank's claim to the proceeds is subordinate to the surety's right to recover the amount of the payment bond. Therefore, the rights in the contract proceeds of a surety who pays laborers and materialmen are superior to those of an assignee of a general contractor.

Next, the Supreme Court held that the federal government's right to setoff is superior to that of a surety who pays subcontractors pursuant to a payment bond. *United States v. Munsey Trust Co. of Wash., D.C.*, 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947). *Munsey Trust* involved several gov-

ernment contracts with a general contractor that became insolvent. The general contractor failed to perform on one of the projects, forcing the government to pay another party to complete the job. The government sought to offset the expense against an undisbursed retained percentage of the contract price. The subcontractors were paid by the payment bond surety. The receiver, acting for benefit of the surety, maintained that the surety's right to the retained funds was superior to the government's right to setoff. The Court held that the government's right to offset its damages for breach of contract are superior to the rights of a surety who pays the claims of subcontractors pursuant to a payment bond.

*Munsey Trust* also articulated the following priority rules in cases involving government contracts:

1) A surety may not enforce its right of indemnification against the government but may prevail over the general contractor.

2) When the government withholds a portion of the contract price, it is a secured creditor. The government's right to offset is superior to the rights of the general contractor, therefore, monies setoff by the government are not funds due and owing to the general contractor.

3) Subcontractors cannot assert a right to payment against the federal government, cannot take liens on public works, and cannot have liens on amounts setoff by the government (because they are not funds due and owing to the general contractor).

4) The rationale for the government's withholding of a percentage of the contract price is primarily to guarantee completion of the work and secondarily to ensure that subcontractors get paid. Therefore, the government's right to setoff takes precedence over subcontractors' claims. The government has no obligation to pay subcontractors.

5) Subcontractors have no rights to funds retained by the government. Therefore, sureties stepping into the shoes of the subcontractors (paid by the surety) similarly have no rights to the retained funds. If the subcontractors are not paid, the government

980

is not to release the funds, and the surety is not entitled to subrogation.

6) The surety assumes the risk of the general contractor's insolvency, not the federal government. Thus the government's right to setoff is superior to the surety's right to indemnification.

*Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962), is also instructive. The facts in *Pearlman* are similar to those in *Munsey Trust* except that the government turned over the withheld sums to the bankruptcy trustee. The surety (who paid the subcontractors) claimed ownership of, an equitable lien on, or a prior right to the withheld funds, while the trustee maintained that the funds became property of the estate. The Court reiterated that general contractors have a duty to pay their subcontractors, that sureties who pay the debts of their principals are entitled to indemnification and that sureties may stand in the place of the persons they pay. By paying the subcontractors, the surety acquired a right to the funds retained (in part to ensure payment of subcontractors and laborers) by the government. The surety is therefore entitled to be subrogated to the rights of the subcontractors and to recover the amount paid to the subcontractors (up to the amount of the retainage) from the fund.[5] Thus *Pearlman* clarifies that the rights of unpaid subcontractors to unpaid contract proceeds are analogous to the rights of a payment bond surety who pays laborers and material suppliers, and that such rights do not turn on whether proceeds are retained by the government or held by the bankruptcy trustee.

■ Read in unison, *Prairie State, Henningsen, Munsey Trust* and *Pearlman* yield the following priority ranking for entitlement to proceeds of government construction contracts:

1. the federal government exercising a right of offset;

2. unpaid subcontractors and sureties who have either paid subcontractors pursuant to a payment bond or com-

pleted the contract pursuant to a performance bond;

3. assignees of the general contractor, including secured creditors; and

4. the general contractor or the bankruptcy trustee.

Paid subcontractors and sureties who have not performed the contract or paid the laborers and material suppliers are not entitled to receive any of the withheld contract proceeds.

Recent cases illustrate that this analysis is correct. In *United States v. TAC Constr. Co.*, 760 F.Supp. 590 (S.D.Miss.1991), the unpaid portion of a contract between the Navy and TAC, the general contractor, was placed in escrow after the government offset its claims for taxes and the costs of uncompleted work. TAC had assigned its interest in the Navy contract to a bank, which asserted a claim against the escrowed proceeds. A second bank held a security interest in TAC's accounts, contract rights and chattel paper. This bank also asserted an interest in the proceeds of the Navy contract. An unpaid subcontractor asserted a claim to the escrowed funds against TAC and the payment bond sureties (who had not paid its claim). The court was therefore called upon to determine the relative priorities of the subcontractor, the banks, TAC and the United States to the contract proceeds (including the amounts offset by the government). The court concluded that the federal government's right to offset unpaid taxes is superior, followed by its right to offset its breach of contract damages. Unpaid subcontractors take next, then sureties who have paid subcontractors, pursuant to a payment bond, take. Assignees of the general contractor, including creditors with perfected security interests, may share in any remaining proceeds. Applying the ranking of rights set forth by the Supreme Court and *TAC* to this case, the Defendants, as unpaid subcontractors, will prevail unless the United States in the form of the SBA is

5. In a concurring opinion, Justice Clark, joined by Justices Douglas and Brennan, concluded that the surety could not recover by standing in the shoes of the subcontractors since subcontractors cannot have a lien on public property. However, the surety could prevail by subrogation to the rights of the federal government since it fulfilled its obligation under a payment bond.

entitled to exercise the Navy's right to set-off.[6]

## B. Setoff[7]

■ The Defendants argue that the SBA should not be afforded the special priority rights of the sovereign (as is the Internal Revenue Service) because the SBA is a quasi-commercial lender. *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 737–38, 99 S.Ct. 1448, 1463–64, 59 L.Ed.2d 711 (1979). The Defendants assert that the SBA cannot step into the shoes of the Navy and exercise a right to setoff in the Proceeds. The SBA responds that the Defendants should be estopped from asserting this argument because they did not raise the issue as an affirmative defense in their answers. To be sure, failure to plead an affirmative defense results in waiver of the defense. *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 235 (7th Cir.1991). However, an affirmative defense need not be raised where a mere denial of an allegation in the complaint is sufficient. A fact that controverts one of the plaintiff's allegations may be raised by a denial; a fact dealing with an entirely new matter having nothing to do with whether the plaintiff's claims are or are not true must be raised by affirmative defense. Jack H. Friedenthal et al., *Civil Procedure* § 5.20 (1985).

In its complaint, the SBA alleged:

9. The SBA is the holder of a secured claim against Pyramid in an amount of 490,574.88. The SBA's claim is secured by a perfected security interest and by the federal government's right of offset against PYRAMID'S claim against it under the Prime Contract.

Lazzaro admitted the allegations in this paragraph. Admissions contained in the pleadings are binding and may support a motion for summary judgment against a party even if contrary evidence is later produced. *Missouri Hous. & Dev. Comm'n v. Brice*, 919 F.2d 1306, 1315 (8th Cir.1990). If the SBA has a right to offset, then the Defendants lose. Lazzaro admitted the right of offset and therefore loses because the government's right to offset a debt is superior to a subcontractor's right to payment as a matter of law.

■ All American and Gerson answered that they lacked sufficient knowledge or information to form a belief as to the truth of the averments in that paragraph, which has the effect of a denial. Fed.R.Civ.P. 8(b). Since All American's and Gerson's responses merely controvert the SBA's allegations, a denial is sufficient to shift the evidentiary burden to the SBA to show that it may exercise the federal government's right of offset. *In re Ionosphere Clubs, Inc.*, 164 B.R. 839, 841 (Bankr.S.D.N.Y.1994) (creditors have the burden of proving their right to setoff in bankruptcy).

■ The SBA asserts that it is entitled to offset its debt against the Proceeds pursuant to § 553 of the Code.[8] Setoff is grounded on the absurdity of making A pay B when B owes A. *Studley v. Boylston Nat'l Bank*, 229 U.S. 523, 528, 33 S.Ct. 806, 808, 57 L.Ed. 1313 (1913); *Matter of Bevill, Bresler & Schulman Asset Management Corp.*, 896 F.2d 54, 57 (3d Cir.1990). Section 553 recognizes a right to setoff as created either by statute or by common law. *In re Ionosphere Clubs, Inc.*, 164 B.R. at 841; *Matter of Martin*, 130 B.R. 930, 938 (Bankr.N.D.Ill.1991). Creditors must possess a valid right to setoff under some federal or state substantive law; § 553 is not an independent source of setoff rights. *In re Public Serv. Co. of N.H.*, 884 F.2d 11, 14, 16 (1st Cir.1989). The SBA

---

6. In light of this holding, it is unnecessary for the Court to determine whether the Defendants have priority status under either the Miller Act or pursuant to third party beneficiary or equitable lien theories.

7. The terms "setoff" and "offset" are commonly used interchangeably as synonyms. However, section 553 of the Code uses "setoff" as a noun and "offset" as a verb. Therefore, the Court will adhere to the usage in the Code regardless of the terminology found in the cases.

8. Section 553 provides:

(a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . .

11 U.S.C. § 553(a).

correctly notes that when the government holds back a portion of the contract price from a debtor, the government may use those funds for the extinguishment of the debts due to it. *United States v. Munsey Trust Co. of Wash., D.C.,* 332 U.S. 234, 239, 67 S.Ct. 1599, 1601–02, 91 L.Ed. 2022 (1947). However, the bankruptcy court need not automatically enforce that right merely because a right to setoff exists; equitable principles, such as the equal treatment of creditors in similar positions, must also be considered. *Bevill, Bresler,* 896 F.2d at 57; *Ionosphere Clubs,* 164 B.R. at 841; *In re Lakeside Community Hosp., Inc.,* 151 B.R. 887, 890, 893 (N.D.Ill.1993); *In re Hancock,* 137 B.R. 835, 838, 840 (Bankr.N.D.Okla.1992); *Martin,* 130 B.R. at 939. *Cf., Matter of Elcona Homes Corp.,* 863 F.2d 483, 484 (7th Cir.1988).

■ To offset a debt pursuant to § 553(a), the creditor must show that 1) the debtor owes a debt to the creditor which arose prior to the commencement of the bankruptcy case; 2) the debtor holds a claim against the creditor which arose prior to the commencement of the case; and 3) the debt and the claim are mutual. *Lakeside,* 151 B.R. at 891; *Martin,* 130 B.R. at 940. The first two elements are not disputed here. Pyramid owes a debt to the SBA and holds a claim against the Navy. Thus the Court's inquiry must focus on whether the Navy and the SBA may be considered to be a single government entity, thereby fulfilling the mutuality requirement and giving the SBA the right to setoff.

■ Mutuality exists only when the debts are in the same right and between the same parties, standing in the same capacity. *Bevill, Bresler,* 896 F.2d at 59; *In re Davidovich,* 901 F.2d 1533, 1537 (10th Cir.1990); *Boston & Maine Corp. v. Chicago Pac. Corp.,* 785 F.2d 562, 566 (7th Cir.1986). There is no mutuality when debts arise between parties acting in different capacities, even when the

entities involved are related. *Lakeside,* 151 B.R. at 891. The parties involved in the two transactions must be identical. *Hancock,* 137 B.R. at 845–46.[9] Put differently, the Bankruptcy Code prohibits "triangular" setoffs. *Elcona Homes,* 863 F.2d at 486. Mutuality for purposes of setoff is to be strictly construed. *Lakeside,* 151 B.R. at 891; *In re Communicall Central, Inc.,* 106 B.R. 540, 545 (Bankr.N.D.Ill.1989); *In re NTG Indus., Inc.,* 103 B.R. 195, 197 (Bankr.N.D.Ill.1989).

■ There is a split in the authorities as to whether separate departments and agencies of the same government are a single entity for mutuality purposes under § 553.[10] The seminal case for the proposition that mutuality exists when a party owes a debt to one governmental department or agency and is owed an obligation by a different governmental department or agency is *Cherry Cotton Mills, Inc. v. United States,* 327 U.S. 536, 66 S.Ct. 729, 90 L.Ed. 835 (1946). In that non-bankruptcy case, the plaintiff was entitled to a tax refund under the Agricultural Adjustment Act but owed a balance on a loan from the Reconstruction Finance Corporation. When the government sought to offset the loan balance with the tax refund, the plaintiff appealed, arguing that the RFC should be treated as if it were a privately owned corporation and that setoff was inappropriate. The Court concluded that:

> "[e]very reason that could have prompted Congress to authorize the Government to plead counterclaims for debts owed to any of its other agencies applies with equal force to debts owed to the R.F.C. ... That the Congress chose to call it a corporation does not alter its characteristics so as to make it something other than what it actually is, an agency selected by Government to accomplish purely Governmental purposes."

*Id.* at 539, 66 S.Ct. at 730. Thus *Cherry* stands for the proposition that government

---

**9.** There is no requirement that the debts arise out of the same transaction in order for setoff to be available under § 553. *Davidovich,* 901 F.2d at 1537; *In re IML Freight, Inc.,* 65 B.R. 788, 793 (Bankr.D.Utah 1986).

**10.** *Compare, e.g., Matter of Butz,* 154 B.R. 541, 544 (S.D.Iowa 1989), *In re Thomas,* 84 B.R. 438, 440 (Bankr.N.D.Tex.1988) and *United States Through the Small Business Admin. v. Rinehart,* 88 B.R. 1014 (D.S.D.1988), *aff'd in part, rev'd in part,* 887 F.2d 165 (8th Cir.1989) (right to setoff exists) *with Ionosphere Clubs,* 164 B.R. at 839, *Lakeside,* 151 B.R. at 887 and *Hancock,* 137 B.R. at 835 (no right to setoff exists).

agencies, even when acting in the capacity of private commercial lenders, may be considered as a single entity for purposes of setoff and counterclaims.

Increasingly, courts have extended *Cherry* to apply to setoffs in the bankruptcy context. *See, e.g., Thomas*, 84 B.R. at 440 (relying on *Cherry* ); *In re Julien Co.*, 116 B.R. 623, 624 (Bankr.W.D.Tenn.1990) (holding that mutuality exists between the Commodity Credit Corporation and the Agricultural Marketing Service based upon *Thomas* and *Cherry* ); *Rinehart*, 88 B.R. at 1016 (relying on *Thomas* and *Cherry* ). These courts found no authority for distinguishing between setoffs within bankruptcy and setoffs outside the bankruptcy context. *Rinehart*, 88 B.R. at 1016. If such a distinction is made, debtors might attempt to improve their position vis-a-vis a government agency merely by filing a bankruptcy petition. *Thomas*, 84 B.R. at 440. As a result, "there appears to be an exception to the mutuality requirement when the federal government is involved." *Julien*, 116 B.R. at 624. Thus this line of authority holds that mutuality for setoff is present in the sense that both agencies are part of the federal government. *Id.* at 625.

■■■■■ However, some courts have concluded that setoff in bankruptcy cases should be treated differently than setoff in other contexts. "[T]he federal law of bankruptcy presents different and unique considerations, as payments made by one government agency to another during a bankruptcy proceeding may operate to the detriment of other creditors." *Bosarge v. United States Dept. of Educ.*, 5 F.3d 1414, 1419 n. 7 (11th Cir. 1993) (noting the split in authority). Bankruptcy is generally oriented toward the prevention of preferential treatment of creditors. *Sampsell v. Imperial Paper & Color Corp.*, 313 U.S. 215, 219, 61 S.Ct. 904, 907, 85 L.Ed. 1293 (1941); *Boston & Maine*, 785 F.2d at 566; *Ionosphere Clubs*, 164 B.R. at 843; *Lakeside*, 151 B.R. at 893; *Martin*, 130 B.R. at 939; *IML Freight*, 65 B.R. at 791. Treat-

ing each governmental department or agency as a separate creditor advances the bankruptcy policy of treating similarly situated creditors alike. "[T]he operation of this privilege of setoff has the effect to pay one creditor more than another." *Hancock,* 137 B.R. at 844, citing *Cumberland Glass Mfg. Co. v. De Witt*, 237 U.S. 447, 455, 35 S.Ct. 636, 639, 59 L.Ed. 1042 (1915). When a creditor offsets a debt, it is receiving full repayment and is therefore in a better position than other creditors who will receive less than the full value of their claims because they are not entitled to setoff. *Public Serv.*, 884 F.2d at 13; *Elcona Homes*, 863 F.2d at 485; *Boston & Maine*, 785 F.2d at 566; *Ionosphere Clubs*, 164 B.R. at 843; *Lakeside*, 151 B.R. at 893–94; *Martin*, 130 B.R. at 939. Put differently, the creditor who gets paid in full via setoff receives a "preference" at the expense of other creditors. *Bevill, Bresler*, 896 F.2d at 57; *IML Freight*, 65 B.R. at 792.[11] By interpreting mutuality narrowly, setoffs will only be allowed where the equitable considerations are strongest—namely where the claims or debts are owed between the same parties in the same right or capacity. *Ionosphere Clubs*, 164 B.R. at 843.

An analysis of the definitions in the Code supports this conclusion. § 553(a) provides that setoff is a right of a "creditor." A "creditor" is an "entity" that has a claim against the debtor or the estate, or an "entity" that has a community claim. 11 U.S.C. § 101(10). An "entity" includes person, estate, trust, *governmental unit*, and United States trustee. 11 U.S.C. § 101(15) (emphasis added). Finally, " 'governmental unit' means United States; State; ...; department, agency, or instrumentality of the United States ..." 11 U.S.C. § 101(27). Some courts have therefore interpreted the differentiation between the United States and a department (or agency) of the United States as evidence of congressional intent to treat each governmental department or agency as a separate creditor. *See Ionosphere Clubs*,

---

11. This argument illustrates a flaw in the logic of cases like *Thomas* when applied to a chapter 7 proceeding. Except in rare instances, the government's loss is a benefit to the other similarly situated creditors. The debtor receives nothing, so there is no reason for the debtor to care which

creditors receive the largest shares of a limited pool of assets. *See IML Freight*, 65 B.R. at 792 (setoffs occurring after the commencement of a liquidation case have no effect on the debtor) (citations omitted).

*Inc.,* 164 B.R. at 842–43; *Lakeside,* 151 B.R. at 891–92 (holding that the Illinois Department of Revenue, Department of Employment Security and Department of Public Aid are different entities for purposes of setting off a debt under § 553); *Hancock,* 137 B.R. at 846 (the SBA and the IRS different entities for setoff purposes). *But see Thomas,* 84 B.R. at 440 ("This court does not think that Congress intended to change this long-established governmental right to setoff when it adopted the definition of entity in § 101(1[5])").

If resort to the statute is unsatisfactory in seeking to determine whether various agencies of the federal government are to be considered as if one for mutuality purposes, perhaps the issue should be decided by resort to policy: given the pervasive nature of government involvement in business (as a debtor and creditor), and given the violence done to the equality principle by permitting a right of setoff, bankruptcy courts should not find sufficient identity between different agencies of the government so as to permit setoff absent clearer statutory direction to do so. Stated differently, § 553 should be read restrictively.

██ The Court concludes that the better reasoned approach is to treat each department, agency, or instrumentality of the United States as a separate entity for purposes of setoff. Here, the Navy and the SBA must be considered to be two distinct entities. They each have separate budgets and staffs, serve different functions and possess distinct claims, privileges and relationships with respect to Pyramid. The SBA owes Pyramid nothing, and Pyramid owes the Navy nothing. This distinction serves to differentiate *Munsey Trust,* where the department of the government that contracted with the debtor was the same agency that withheld the proceeds for breach of the contract. While it may be appropriate for the Navy and the SBA to be considered in other contexts as separate parts of one entity, they are separate entities under the strict mutuality requirements imposed in bankruptcy cases. *Cf. Hancock,* 137 B.R. at 847. Accordingly,

the Court holds that the SBA is not entitled to offset its debt against the Proceeds.[12]

### *CONCLUSION*

In summary, the Court concludes that the rights of unpaid subcontractors to contract proceeds are superior to those of creditors secured by an assignment by the general contractor, and that the SBA is not entitled to exercise the Navy's right to offset its debt against the Prime Contract Proceeds. Because Lazzaro is bound by its admission that the SBA is secured by a right to setoff its debt, the rights of the SBA are superior to those of Lazzaro in this case. However, All American and Gerson preserved this argument, and their rights in the Proceeds are superior to those of the SBA.

### *ORDER*

For the reasons set forth in the Court's Memorandum Opinion issued on this date, IT IS HEREBY ORDERED that the motion of the United States, on behalf of the Small Business Administration, for summary judgment is GRANTED with respect to The Lazzaro Companies, Inc. and DENIED with respect to All–American Corporation and Gerson Electric Construction Company.

---

**12.** Because the Court concludes that the SBA cannot offset its debt against the Proceeds, the SBA's argument that it did not waive its right to offset is irrelevant.