59 F.3d 1041
 64 USLW 2049, 33 Collier Bankr.Cas.2d 1784,
27 Bankr.Ct.Dec. 643, Bankr. L. Rep. P 76,562
 In re Curtis Lawayne TURNER and Rita Gail Turner, Debtors,
Curtis Lawayne TURNER and Rita Gail Turner, Appellees/Cross-Appellants,
v.
SMALL BUSINESS ADMINISTRATION, the Administrator of the
Small Business Administration, an Agency of the
Government of the United States of
America, Appellant/Cross-Appellee.
 Nos. 94-6191, 94-6208.
 United States Court of Appeals,
Tenth Circuit.
 July 10, 1995.
 
 Cynthia L. Alexander, Civ. Div. (Frank W. Hunger, Asst. Atty. Gen., Washington, DC, Vicki Miles-LaGrange, U.S. Atty., Rosalee Morris, Sp. Asst. U.S. Atty., Oklahoma City, OK, J. Christopher Kohn and Tracy J. Whitaker, Civ. Div., U.S. Dept. of Justice, Washington, DC, with her on the briefs), U.S. Dept. of Justice, Washington, DC, for appellant/cross-appellee.
 Kenneth L. Peacher (Thomas J. Steece with him on the brief), Steece, Mathews, Gray & Peacher, P.C., Oklahoma City, OK, for appellees/cross-appellants.
 Before HENRY and McKAY, Circuit Judges, and VRATIL,* District Judge.
 McKAY, Circuit Judge.
 
 
 1
 The Small Business Administration ("SBA") appeals the entry of summary judgment against it in this Chapter 12 bankruptcy case. On September 17, 1993, the bankruptcy court granted summary judgment in the amount of $24,599.35 in favor of the Turners, ruling that the United States had improperly set off Agricultural Stabilization and Conservation Service ("ASCS") payments due the Turners against the Turners' delinquent debt to the SBA. The district court affirmed, as do we.
 
 
 2
 The facts of this case are not in dispute. Several years ago, the Turners became indebted to the SBA. By 1991, the Turners owed almost $200,000 and had become delinquent in their payments. In August 1991, SBA attempted to accelerate the loans, but no payment was tendered.
 
 
 3
 In 1992, the Turners executed four contracts with the ASCS. Under the terms of these contracts, the Turners agreed to withhold certain land from production and to maintain soil conservation practices, among other requirements. In exchange, ASCS agreed to pay the Turners deficiency payments based on a predetermined formula. The Turners and the State National Bank of Marlow ("the Bank") executed a Joint Payment Authorization for each contract, providing that ASCS payments were to be paid jointly to the Turners and the Bank. Pursuant to this arrangement, in April 1992 the ASCS issued four checks totaling almost $11,000 to the Turners and the Bank.
 
 
 4
 On May 8, 1992, the SBA gave written notice to the Turners of its intent to request administrative offset of any ASCS payments due the Turners against the delinquent SBA debt, and apprised them of their right to object to this request. On July 23, 1992, after a full hearing, the SBA Office of Hearings and Appeals in Washington D.C. declared that the SBA could collect the debt through administrative offset. On September 24, 1992, the SBA directed the Oklahoma State Executive Director of ASCS to offset the amounts due on the Turners' two notes from payments due the Turners under the ASCS program. The SBA also gave notice of the offset to the Turners at this time. On September 28, 1992, the State Executive Director of ASCS approved the offset and posted the SBA debt of $197,282.62 on the Stephens County ASCS debt register. Between December 30, 1992, and February 8, 1993, ASCS checks totaling $24,599.35 were directed to the SBA.
 
 
 5
 On February 10, 1993, the Turners filed their petition for Chapter 12 bankruptcy protection. On April 7, 1993, the Turners filed an adversary proceeding in the bankruptcy court, seeking a turnover of the funds diverted to the SBA. The Turners acknowledged SBA and ASCS compliance with the federal regulations governing administrative offsets and did not contest the legality of the offset. Rather, the Turners contended that the administrative offset occurred when the ASCS checks were paid, which occurred within ninety days of the filing of the Turners' Chapter 12 petition. Thus, in the Turners' view, the offset was avoidable as a preference under 11 U.S.C. Sec. 547.
 
 
 6
 The bankruptcy court granted summary judgment for the Turners, ruling from the bench that the setoff had occurred when the ASCS checks submitted to the SBA were honored, which was within ninety days prior to the filing of the bankruptcy petition. The district court affirmed, holding that the offsets were voidable preferences. The government appealed.
 
 
 7
 The government advances a number of arguments that revolve about interpretations of Section 553 of the Bankruptcy Code, which governs the treatment of setoffs. See 11 U.S.C. Sec. 553. We find it unnecessary to address these arguments because of our resolution of a necessary threshold question: Does Section 553 apply to the transactions at issue here? The Turners argue that the administrative offsets were not setoffs within the meaning of 11 U.S.C. Sec. 553 at all, but rather were voidable preferences falling under 11 U.S.C. Sec. 547. We agree.
 
 
 8
 Setoff is an equitable right of a creditor to deduct a debt it owes to the debtor from a claim it has against the debtor arising out of a separate transaction; it "allows parties that owe mutual debts to state the accounts between them, subtract one from the other and pay only the balance." Matter of Bevill, Bresler & Schulman Asset Management Corp., 896 F.2d 54, 57 (3d Cir.1990); see also Jones v. England, 782 P.2d 119, 122 (Okla.1989) (recognizing existence of common law right of setoff in Oklahoma). The United States has an inherent right of setoff. See, e.g., United States v. Tafoya, 803 F.2d 140, 141 (5th Cir.1986) (collecting cases).
 
 
 9
 The Bankruptcy Code preserves a creditor's common law right to setoff where the obligations between debtor and creditor are mutual and both arise either pre-petition or post-petition. 11 U.S.C. Sec. 553(a). There is no dispute that both debts in this case arose pre-petition. Thus, the critical question is whether the two debts meet the mutuality requirement. Our precedents indicate that the obligations between debtor and creditor are mutual when both obligations are held by the same parties, in the same right or capacity. In re Davidovich, 901 F.2d 1533, 1537 (10th Cir.1990). The Turners contend that the SBA and the ASCS are different parties, standing in different capacities, and that therefore the mutuality requirement is not met. The SBA counters that both agencies are part of the United States government, which should be treated as a unitary creditor for the purposes of setoff in the bankruptcy context.
 
 
 10
 The government finds support for its argument in Luther v. United States, 225 F.2d 495, 498 (10th Cir.1954). We acknowledge that dicta in Luther does tend to suggest that the United States is a unitary creditor for some purposes. However, as other courts have noted, Luther, which was decided long before the enactment of the modern Code, did not address the factual context with which we are presented here--a reorganization under Chapter 12 of the Bankruptcy Code.
 
 
 11
 Luther is inapplicable to the instant case for several reasons, including that it involved a priority dispute under Section 64(a)(5) of the Bankruptcy Act (ancestor of Bankruptcy Code Section 507(a)); it arose in a liquidation of assets, and not reorganization, setting; it only addressed the question of whether the Commodity Credit Corporation is a separate legal entity from the United States and whether the IRS payment was considered owed to the debtor when no payments were due and owing on the filing date; and it relied on Cherry Cotton Mills, which did not arise in a bankruptcy setting.
 
 
 12
 In re Rinehart, 76 B.R. 746, 751-52 (Bankr.D.S.D.1987), aff'd, 88 B.R. 1014 (D.S.D.1988), aff'd in part, rev'd in part, 887 F.2d 165 (8th Cir.1989); see also Matter of Mehrhoff, 88 B.R. 922, 930 (Bankr.S.D.Iowa 1988) ("[Luther arose] under section 64(a)(5) of the Bankruptcy Act which is the predecessor of 11 U.S.C. Sec. 507(a).... [N]either section 64(a) nor section 507 entails the 'mutuality' consideration found in the offset sections." (internal citation omitted)). We note, moreover, that the policies underlying the reorganization provisions--which aim to give a petitioner the opportunity to begin anew--differ fundamentally from those driving the liquidation provisions--which simply attempt to salvage as much money as possible for creditors. See Rinehart, 76 B.R. at 754. We therefore conclude that Luther does not bind our determination of the mutuality question.
 
 
 13
 This issue has apparently not yet been addressed by any of the Courts of Appeal.[1] It has, however, been considered by several bankruptcy and district courts, which have divided on the issue. In our judgment, the most thorough and thoughtful of these opinions is In re Hancock, 137 B.R. 835 (Bankr.N.D.Okla.1992), which held that no mutuality exists between government agencies in this context. See also In re Ionosphere Clubs, Inc., 164 B.R. 839, 842-43 (Bankr.S.D.N.Y.1994); In re Pyramid Indus., Inc., 170 B.R. 974, 982-84 (Bankr.N.D.Ill.1994); Mehrhoff, 88 B.R. at 930-34. But see In re Gibson, 176 B.R. 910, 915-16 (Bankr.D.Or.1994); Matter of Butz, 154 B.R. 541 (S.D.Iowa 1989); In re Mohar, 140 B.R. 273, 277 (Bankr.D.Mont.1992); In re Julien Co., 116 B.R. 623, 624-25 (Bankr.W.D.Tenn.1990); In re Thomas, 84 B.R. 438, 440 (Bankr.N.D.Tex.1988), aff'd in part, rev'd in part, 91 B.R. 731 (N.D.Tex.1988); Small Business Admin. v. Rinehart, 88 B.R. 1014, 1016 (D.S.D.1988), aff'd in part, rev'd in part, 887 F.2d 165 (8th Cir.1989).
 
 
 14
 Hancock involved an effort by the SBA to offset a tax refund owed by the IRS to the Hancocks against a loan from the SBA on which the Hancocks had defaulted. As in this case, the administrative offset was properly carried out under the federal regulations and the payment was made within ninety days prior to the filing of the debtor's bankruptcy petition. The debtors then sought to have the transfer set aside as a voidable preference under 11 U.S.C. Sec. 547. As in this case, in Hancock, the "basic issue involve[d] a collision between avoidance of preferential transfers under 11 U.S.C. Sec. 547 and setoff under 11 U.S.C. Sec. 553." Hancock, 137 B.R. at 837. After reviewing the legislative history of the relevant code provisions, the Hancock court concluded:
 
 
 15
 "[S]etoff" should be construed so as to minimize its interference with Sec. 547. This is best accomplished by giving "setoff" its traditional, rather narrow meaning. Where a transaction actually appears to be "somewhat different" from the general run of preferences, in that it involves a mere netting-out of counterclaims or reconciliation of accounts and not a transfer of money or property, then such transaction may be considered a "setoff" within the meaning of Sec. 553.... Any other transaction should be recognized as a "transfer" under Sec. 101(4) and subject to avoidance as provided by Sec. 547.
 
 
 16
 ... What happened here was not a mere netting-out of reciprocal obligations between debtor and the IRS, or between debtor and the SBA. What happened here was the seizure of debtor's property (tax refunds) and the payment of the same to SBA instead of to debtor's estate.
 
 
 17
 Id. at 845.
 
 
 18
 While we recognize that the United States normally has a right to setoff, see Cherry Cotton Mills v. United States, 327 U.S. 536, 66 S.Ct. 729, 90 L.Ed. 835 (1946), we agree with the Hancock court that setoff should be given a narrow meaning in the reorganization context. As one bankruptcy court has observed,
 
 
 19
 [s]erious bankruptcy reorganization policy concerns are ... raised by this issue. To allow a governmental agency like the SBA ... to piggyback under the guise of "government" and offset ASCS-CCC farm program payments may effectively deny farmers or ranchers a meaningful opportunity [to] attempt to reorganize in a Chapter 11, 12, or 13 setting.
 
 
 20
 Rinehart, 76 B.R. at 754. This narrow interpretation of setoff is best accomplished by strictly construing the mutuality requirement. See Pyramid Indus., 170 B.R. at 982; In re Lakeside Community Hosp., Inc., 151 B.R. 887, 891 (N.D.Ill.1993); In re Balducci Oil Co., Inc., 33 B.R. 847, 851 (Bankr.D.Colo.1983); In re Virginia Block, 16 B.R. 560, 562 (Bankr.W.D.Va.1981).
 
 
 21
 We acknowledge that all federal agencies draw from or contribute to a common pool of money, the U.S. Treasury. This familial relationship between the SBA and the ASCS does offer some support for a finding of mutuality. The general rule, however, holds that triangular setoffs among related parties do not meet the mutuality requirement. Thus, in the corporate context, "[i]t is well-established that one subsidiary may not set off a debt owed to a bankrupt against a debt owing from the bankrupt to another subsidiary." Depositors Trust Co. v. Frati Enters., 590 F.2d 377, 379 (1st Cir.1979); see also Matter of Elcona Homes Corp., 863 F.2d 483, 486 (7th Cir.1988); In re Vehm Eng'g Corp., 521 F.2d 186, 190-91 (9th Cir.1975). We think the transaction attempted in this case to be closely analogous to a triangular setoff between related corporate entities. To treat government agencies more favorably than comparable private parties would run counter to the principle that all like creditors should be treated equally. See Pyramid Indus., 170 B.R. at 983 ("Treating each governmental department or agency as a separate creditor advances the bankruptcy policy of treating similarly situated creditors alike.").
 
 
 22
 We note, moreover, that, notwithstanding familial ties, government agencies frequently squabble in court. Separate agencies have distinct budgets and interests, and occasionally sue each other to protect their budgets and interests. See United States v. ICC, 337 U.S. 426, 69 S.Ct. 1410, 93 L.Ed. 1451 (1949); United States v. Federal Maritime Comm'n, 694 F.2d 793 (D.C.Cir.1982); Dean v. Herrington, 668 F.Supp. 646 (E.D.Tenn.1987) (TVA vs. the Department of Energy). More important to the question analyzed here, bankruptcy law does not treat individual agencies as a single unit when multiple agencies are creditors in the same case. Rather, some agency claims are given priority over others based on general principles of bankruptcy law, such as whether the debt was secured. Hancock, 137 B.R. at 846. We see no reason to accord agencies more favorable treatment in this context.
 
 
 23
 We hold that mutuality was lacking between the SBA and the ASCS. The administrative offset between the SBA and ASCS was not therefore a setoff but rather a preference within the meaning of 11 U.S.C. Sec. 547. Since it is clear that the transfer of the money took place in the ninety days preceding the filing of the bankruptcy petition, it is voidable. We find no error in the district court's holding. Because Section 547 controls this case, we need not reach the arguments advanced with reference to Section 553.
 
 
 24
 The Turners claim they are entitled to attorney's fees under Rule 54(d)(2) because the SBA's position is not "substantially justified." We disagree. Although the government does not ultimately carry the day, its arguments were persuasive and relied on proper authority. Therefore, no attorney's fees shall be awarded.
 
 
 25
 AFFIRMED.
 
 
 
 *
 Honorable Kathryn H. Vratil, United States District Judge for the District of Kansas, sitting by designation
 
 
 [1]
 The issue was mentioned, but not decided, in In re Cascade Roads, Inc., 34 F.3d 756, 763 n. 8 (9th Cir.1994)