**In re PYRAMID INDUSTRIES, INC., Debtor**

**UNITED STATES of America, Plaintiff/Appellant,**

v.

**Andrew MAXWELL, not individually but as Trustee of the Estate of Pyramid Industries, Inc., et. al., Defendants/Appellees.**

No. 94 C 7497.

United States District Court,
N.D. Illinois,
Eastern Division.

June 17, 1997.

Joel Robert Nathan, U.S. Atty's. Office, Chicago, IL, for U.S.

Timothy Joseph McGonegle, Law Office of Andrew J. Maxwell, Chicago, IL, for Andrew Maxwell, trustee.

Robert C. Samko, Robert C. Samko, P.C., Chicago, IL, for All American Corp.

Peter G. Swan, Emalfarb, Swan & Bain, Highland Park, IL, for Gerson Electric Const. Co.

Kurt Alexander Muller, The Muller Firm, Ltd., Chicago, IL, for Lazzaro Companies, Inc.

## MEMORANDUM AND ORDER

MANNING, District Judge.

This matter comes before the court on appeal from a decision of the United States Bankruptcy Court for the Northern District of Illinois denying plaintiff's motions for summary judgment and reconsideration. For the reasons set forth below, the decision of the bankruptcy court is affirmed.

## BACKGROUND

On September 14, 1989, Pyramid Industries, Inc. ("Pyramid") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The case was converted to chapter 7 on October 30, 1989, and Andrew Maxwell became the trustee. Among the assets of Pyramid's estate was the sum of $51,050 in proceeds arising from a contract between Pyramid and the United States Navy ("Navy").

There are several entities, each with an interest in the proceeds of Pyramid's estate. Among them was the SBA which loaned $590,574.88 to Pyramid in notes dating from July 2, 1984 through July 3, 1989. Additionally, All American Corporation ("All American"), holds a claim for $54,817.71 as one of Pyramid's subcontractors under a contract between Pyramid and the Navy ("Prime Contract"). Likewise, Gerson Electric Construction Company ("Gerson"), another subcontractor, entered into a contract with Pyramid to provide electrical labor and materials at the Naval Station. Gerson has not yet received $92,208.50 from Pyramid for work that Gerson has completed.

The United States, on behalf of the SBA, filed a complaint to determine its interest in the Pyramid estate. Among the parties named as defendants were All American and Gerson (hereinafter collectively, "Appellees"). The complaint alleged that Appellees' interests were inferior to those of the SBA. Specifically, the SBA urged that it had a secured priority lien claim arising out of loans extended to Pyramid which predated any interests held by Subcontractors. Alternatively, they argued that their right to offset its claims against the proceeds from the Prime Contract ("Proceeds") was superior to any interest held by Subcontractors. Appellees maintained that the SBA did not have the right to setoff or, alternatively, that the bankruptcy court should use its discretion to deny the SBA that right. Further, Appellees contended that they had an equitable lien in the Proceeds which was superior to the SBA's interest. The United States on behalf of the SBA moved for summary judgment on its declaratory judgment complaint against Appellees.

The bankruptcy court denied both the SBA's motion for summary judgment and a subsequent motion for reconsideration. *See United States v. Maxwell (In re Pyramid Industries, Inc.)*, 170 B.R. 974 (Bankr. N.D.Ill.1994). In its decision, the bankruptcy court began by examining several Su-

**448**

preme Court cases involving public construction, and determined the relative priorities of the SBA and Subcontractors. First, the bankruptcy court reviewed Supreme Court precedent which developed the concept of the equitable lien. Next, the court determined a priority ranking for entitlement to the available Proceeds. After a thorough review of the law, the court adopted the analysis provided in *United States v. TAC Constr. Co.*, 760 F.Supp. 590 (S.D.Miss.1991). *Id.* at 980–81 & n. 6. This analysis placed any rights to setoff first, followed by the rights of unpaid subcontractors or laborers under an equitable lien, followed by sureties who paid subcontractors pursuant to a payment bond.[1] Last came assignees of the general contractor, including creditors with perfected security interests shared in the remaining proceeds. *See id.*

As discussed in greater detail below, the bankruptcy court then considered whether the SBA could take advantage of the Navy's right to setoff. In light of bankruptcy's emphasis on the equitable treatment of creditors, the court narrowly interpreted the bankruptcy code to preclude the SBA from asserting that it and the Navy, as mere divisions of the same United States Government, were the same entity that could use each other's rights to setoff. The bankruptcy court also indicated that it would reach the same result even if the terms of the bankruptcy code did not render the SBA and Navy separate entities.

The matter is now before this court on the United States' appeal. For the reasons that follow, the bankruptcy court is affirmed.

### DISCUSSION

■ The United States District courts have jurisdiction over appeals from final judgments and final orders in bankruptcy cases pursuant to 28 U.S.C. § 158(A). This court must accept the bankruptcy court's findings of fact unless clearly erroneous. *In re Excalibur Auto. Corp.*, 859 F.2d 454, 457 n. 3 (7th Cir.1988) (construing Federal Rule

of Bankruptcy Procedure 8013). The court reviews *de novo* issues of law. *Excalibur,* 859 F.2d at 457 n. 3. Whether or not the United States is a single entity for purposes of setoff is a question of law. *HAL, Inc. v. United States (In re HAL, Inc.),* 196 B.R. 159, 161 (9th Cir.BAP 1996) (citing *In re Doe,* 58 F.3d 494, 498 (9th Cir.1995)). The decision to allow setoff pursuant to section 553 of the Bankruptcy Code is left to the sound discretion of the bankruptcy court. *In re HAL,* 196 B.R. at 161 (citing *In re Cascade Roads, Inc.,* 34 F.3d 756, 763 (9th Cir.1994)). Hence, we review the bankruptcy court's decision not to allow setoff for abuse of discretion. *Id.*

### I. *Setoff.*

■ Setoff allows entities that owe each other money to apply their mutual debts against each other. *Citizens Bank of Maryland v. Strumpf,* —— U.S. ——, ——, 116 S.Ct. 286, 289, 133 L.Ed.2d 258 (1995). Setoff is created by state or federal statute or common law. *State of Illinois v. Lakeside Community Hospital, Inc. (In re Lakeside Community Hospital),* 151 B.R. 887, 890 (N.D.Ill.1993). In section 553 of the Bankruptcy Code, Congress preserves the right to setoff debts owed to parties protected by the bankruptcy laws. *Strumpf,* —— U.S. at ——, 116 S.Ct. at 289. That section states, in pertinent part, as follows:

> [e]xcept as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a *creditor* to offset a *mutual* debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case....

11 U.S.C. § 553(a)(emphasis added).

■ The crucial points of section 533 are the requirements of "mutual" debt between the debtor and the creditor, and that such debt existed prior to the petition for bankruptcy. *See In re Pyramid,* 170 B.R. at

---

1. This conclusion was based, in part, on *Pearlman v. Reliance Insurance Co.,* 371 U.S. 132, 141, 83 S.Ct. 232, 237, 9 L.Ed.2d 190 (1962), where the Supreme Court held that the govern-

ment had a right to use retained funds to pay laborers and materialmen for work that they had completed. *See TAC,* 760 F.Supp. at 593.

982. Here, mutuality is the only element in doubt. *Id.* Even when the power to setoff exists, section 553 does not make the right to setoff mandatory: A bankruptcy court must still exercise its equitable discretion to allow or disallow a setoff. *SBA v. Rinehart*, 88 B.R. 1014, 1018 (D.S.D.1988), *aff'd on other grounds*, 887 F.2d 165, (8th Cir.1989); *see In re HAL*, 196 B.R. at 166.

 The court first considers whether separate departments and agencies of the federal government are a single entity for mutuality purposes of section 553 of the Bankruptcy Code. While mutuality exists when the debts are between the "same parties", there is no requirement that the debts arise out of the same transaction. *In re Pyramid*, 170 B.R. at 982 n. 9. Moreover, while the "same parties" requirement of mutuality generally prevents "triangular setoffs" (i.e. prevents A's attempt to offset an obligation owed by B against B's debt to C), *In re Elcona Homes*, 863 F.2d 483, 486 (7th Cir.1988), most courts view separate federal government agencies together as one entity, the United States. Collier on Bankruptcy at 553–31; *see also In re HAL*, 196 B.R. at 163 (stating a recent majority of courts have held that the governmental agencies satisfy mutuality for purposes of Bankruptcy Code Section 553, and those that have not have often been reversed on appeal).

Outside of the bankruptcy arena, there is no doubt that separate federal agencies are treated as a unitary creditor, and that these agencies may setoff debts owed by one agency against claims that another agency has against a single debtor. *E.g., Turner v. Small Business Administration (In re Turner)*, 84 F.3d 1294, 1298 (10th Cir.1996). The seminal cases involving the common law right to setoff by the federal government are *United States v. Munsey Trust Co.*, 332 U.S. 234, 108 Ct.Cl. 765, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947), and *Cherry Cotton Mills v. United States*, 327 U.S. 536, 66 S.Ct. 729, 90 L.Ed. 835 (1946). Together *Munsey Trust* and *Cherry Cotton Mills* stand for the propositions that the United States, like other creditors, had a common law right to setoff, and that agencies of the United States Government are deemed a unitary creditor. *In re Turner*, 84 F.3d at 1298; *see Munsey Trust*, 332 U.S. at 239, 67 S.Ct. at 1602.

In *Cherry Cotton Mills*, the government owed petitioner a tax refund under the Agricultural Adjustment Act, and the petitioner owed the government, specifically the Reconstruction Finance Corporation ("RFC"), the balance on a loan. *Cherry Cotton Mills*, 327 U.S. at 537, 66 S.Ct. at 729. The Treasury paid the tax refund to RFC, not the petitioner. *Id.* at 538, 66 S.Ct. at 730. The Supreme Court held that a single suit could determine the mutual obligations between the government and a claimant against it, reasoning that all of the government agencies' money comes from the United States, its profits if any go to the United States, and the United States must bear its losses. *Id.* at 539, 66 S.Ct. at 730.

In the case at bar, the bankruptcy court first considered section 553 of the Bankruptcy Code which recognizes and preserves the right of setoff. *Strumpf*, —— U.S. at ——, 116 S.Ct. at 289; *see In re Pyramid*, 170 B.R. at 981. The court analyzed the term mutuality in Section 553, as it applied to the SBA and the Navy. *Id.* at 982. Although the weight of authority has applied *Cherry Cotton Mills's* characterization of separate agencies of the same federal government as a single entity for purposes of setoff, *In re HAL, Inc.*, 196 B.R. at 163, the bankruptcy court held that the Navy and the SBA were not to be treated as a single entity for purposes of this section. *See In re Pyramid*, 170 B.R. at 983. Declining to wholly rely upon Appellees' statutory construction of the provisions defining "creditor" and "entity," the court applied considerations of policy and the equitable principles of bankruptcy to narrowly interpret the meaning of "entity" to exclude different agencies of the same government. *Id.* at 983

In support of their contention that this Court should not treat the Navy and the SBA as a unitary creditor, Appellees follow the bankruptcy court's use of the reasoning of the court in *In re Lakeside Community Hospital*, 151 B.R. 887 (N.D.Ill.1993). In *Lakeside*, two state government agencies similarly tried to offset an amount owed by a bankrupt debtor. *Lakeside*, 151 B.R. at 889.

# 450

Section 101 of the Bankruptcy Code defines a "creditor" as an "entity that has a claim against a debtor .... "; an "entity," in turn as including a "... governmental unit ...."; and a "governmental unit" as "... United States, State, ... department, agency, or instrumentality of the United States ... [or of] a State...." 11 U.S.C. §§ 101(10),(15),(27); *Lakeside,* 151 B.R. at 891 (interpreting these provisions of the Bankruptcy Code to distinguish between "State" and its instrumental agencies). Because this final definition of governmental unit included both the "State" and its "department" or "agency," Lakeside concluded that "congress intended that these units were to be treated as distinguishable and therefore not the same creditor within the provisions of the statute." *Lakeside,* 151 B.R. at 891.

However, the court does not find this statutory interpretation persuasive. Pursuant to the bankruptcy code, the term creditor means United States "or" an agency of the United States. *See* 11 U.S.C. §§ 101(10),(15),(27). But the use of the word "or" does not necessarily limit the statute to mutually exclusive choices. *See* SR 95–989, *reprinted in Bankruptcy Code, Rules and Forms,* West 1993 ed., at 25. Consequently, the plain language of the statute does not indicate that "creditor" is limited to either the United States or a specific agency of the government. In fact, the use of the conjunctive "or" arguably indicates that the "creditor" may include either the entire United States government as well as the individual agencies thereof. As the Supreme Court stated in *Small Business Administration v. McClellan,* 364 U.S. 446, 81 S.Ct. 191, 5 L.Ed.2d 200 (1960), Congress created the SBA to "lend money of the United States." *McClellan,* 364 U.S. at 450, 81 S.Ct. at 195. Thus, the SBA provides its loans on behalf of the federal government, not merely the Administration.

When Congress intended to limit setoff in the bankruptcy venue, it did so explicitly. Section 553 of the Code, for example, expressly states that the right to setoff is cir-

cumscribed by sections 362 and 363 in regard to a stay of the right of setoff after bankruptcy, and protection for the holder of a right to setoff. *See* 11 U.S.C. § 553. In addition, section 553(a) provides that a creditor of a bankrupt may not buy debts owed by others in order to offset the debt owed to him. 11 U.S.C. § 553(a)(1). Likewise, where Congress wanted to limit the rights of a governmental unit, it did so, as in section 525(a) of the Code. See 11 U.S.C. § 525(a)(prohibiting a governmental unit from certain discriminating treatment of debtors by providing that "... a governmental unit may not...."). Neither party asserts that any of the exceptions provided for in section 553, setoff, apply to the case at bar.

Although some courts have viewed the Bankruptcy Code's mutuality requirement narrowly, a majority of courts have applied the *Cherry Cotton Mills* unitary creditor theory to agencies of the federal government in bankruptcy. Collier on Bankruptcy at 553–3 (collecting cases); *see, e.g., In re HAL,* 196 B.R. at 165; *In re Turner,* 84 F.3d at 1298. *But see e.g., In re Lakeside,* 151 B.R. at 892; *In re Hancock,* 137 B.R. at 841. These courts reason, at least in part, that there is only one United States and that all of its agencies act on its behalf as part of a unified government. *See id.* Only the Ninth and Tenth Circuits have addressed the issue of mutuality, and they have both come to the conclusion that governmental agencies satisfy the Bankruptcy Codes requirement of mutuality.

In *In re HAL,* a Ninth Circuit case similar to the case at bar, petitioner filed for bankruptcy. *In re HAL,* 196 B.R. at 160. At the time they filed for bankruptcy, the petitioner owed money to the Internal Revenue service, yet the petitioner was owed money by the Federal Aviation Administration, United States Air Force, Department of Agriculture, and Immigration and Naturalization Service. *Id.* at 161. The Ninth Circuit allowed setoff[2] and held that, as a matter of law, federal government agencies are a single entity for mutuality purposes of setoff under section

---

2. The *HAL* court noted that its analysis would change in a Chapter 7 case where the other unsecured creditors would receive a lower per-centage distribution if setoff were allowed. *See In re HAL,* 196 B.R. at 167 n. 7 (citing *In re Hancock,* 137 B.R. at 841).

553. Similarly, in *In re Turner* the Tenth Circuit agreed with "[t]he more abundant and persuasive authority ... that the United States is a unitary creditor for setoff purposes in bankruptcy." *In re Turner*, 84 F.3d at 1298 (citing *In re Kalenze*, 175 B.R. 35, 37 (Bankr.D.N.D.1994); *In re Mohar*, 140 B.R. 273, 277 (Bankr.D.Mont.1992); *In re Stall*, 125 B.R. 754, 757–58 (Bankr.S.D.Ohio 1991); *In re Julien Co.*, 116 B.R. 623, 624–25 (Bankr.W.D.Tenn.1990); *In re Evatt*, 112 B.R. 405, 412, 413 (Bankr.W.D.Okla.1989)).

This court concurs with the majority of courts, including the appellate courts of the Ninth and Tenth Circuits, and interprets the plain meaning of provisions of the Bankruptcy Code to consider the separate departments of the United States government to satisfy the mutuality requirement of section 553. Therefore, this Court disagrees with the bankruptcy court's opinion to the extent that it may be read to interpret section 553 to per se prohibit bankruptcy courts from granting a setoff between federal agencies.

▪ Although the court disagrees with the bankruptcy court's interpretation of the mutuality requirement, we still affirm the bankruptcy court's decision to disallow the setoff as an appropriate exercise of its equitable discretion. In interpreting the statutory provision, we examine the right to setoff in light of the Bankruptcy Code's goals and objectives. *Id.* at 982 (citing *In re Elcona Homes*, 863 F.2d at 484). In particular, the bankruptcy court considered equitable principles, such as the equal treatment of creditors in similar positions, in deciding not to allow setoff. *See id.* (citing *In re Ionosphere*, 164 B.R. 839, 841 (Bankr.S.D.N.Y.1994), *In re Lakeside*, 151 B.R. at 890, 893, *In re Hancock*, 137 B.R. 835, 838, 840 (Bankr.N.D.Okla. 1992)). "[T]he idea of equal treatment is a useful as well as persistent one." *In re Elcona Homes*, 863 F.2d at 484. The purpose of bankruptcy law is to prevent individual creditors from starting a "run" on bankrupt debtors by assuring them that they will be treated equally. *Id.* This important purpose of bankruptcy precludes preferential treatment for having jumped the gun, or unfair treatment for having waited. *Id.* Moreover, regardless of whether separate

entities of the federal government satisfied the mutuality agreement, the bankruptcy court alternatively ruled that "[i]f resort to the statute [was] unsatisfactory[,] ... the issue should be decided by resort to policy." *In re Pyramid*, 170 B.R. at 984. In light of the pervasive nature of the federal government, and the consequent likelihood with which federal agencies will find themselves in the position for setoff, the court would not allow such a setoff where other creditors' interests are adversely affected. *See id.*

As noted, section 553 does not require the bankruptcy court to allow or disallow a setoff. In fact, the bankruptcy court must exercise its equitable discretion in deciding to allow or disallow a setoff under section 553. *See In re Lakeside*, 151 B.R. at 890. The bankruptcy court should not automatically enforce the right merely because it is permitted under the Bankruptcy Code. *Id.* (citing *In re Elcona Homes Corp.*, 863 F.2d at 484–85). Courts have denied setoff in cases where the creditor has acted inequitably. *Id.* (citing *In re Cascade Roads, Inc.*, 34 F.3d 756, 763–64 (9th Cir.1995)). Additionally, courts have denied setoff when it would jeopardize a debtor's ability to reorganize. *Id.* (citing *In re Lincoln*, 144 B.R. 498, 502–03 (Bankr.D.Mont.1992)). Further, courts deny setoff in a liquidation context because it results in either a preference or priority over other unsecured creditors. *Id.; see In re Hancock*, 137 B.R. at 841. The *HAL* court held that Congress allows discretionary use of setoff under section 553 of the Bankruptcy Code. *Id.*

▪ Bankruptcy courts must take into account special considerations bearing on setoff as it arises in the bankruptcy context. *Hancock*, 137 B.R. at 841. They also must take into account the effects setoff may have on innocent third parties. *Id.* Setoff should only be allowed where appropriate. *Id.* Because allowing setoff is equitable and discretionary in nature, the bankruptcy court should disallow setoff if the rights of those other than the debtor and the creditor are affected by the act:

[I]n bankruptcy an unsecured creditor fortunate enough to owe his debtor as much as or more than the debtor owes him can,

**452**

by setting off his debt against the debtor's, in effect receive 100 cents on the dollar, while other unsecured creditors, who have nothing to setoff against the debtor, might be lucky to collect 10 cents on the dollar. The difference in treatment seems based on a fortuitous difference among the unsecured creditors, and therefore arbitrary.... [I]f [setoff] is allowed, the other unsecured creditors will not receive 'the real and just sum owing' to them.

*In re Elcona Homes Corp.*, 863 F.2d at 485.

Here, the rights of those other than the SBA, Navy, and the contractor would be affected if the bankruptcy court allowed setoff. Allowing setoff would affect Subcontractors right to payment for work that they completed on the Prime Contract. The bankruptcy court considered equitable principles, such as the equal treatment of creditors in similar positions, when it decided not to allow the Navy to offset its debt with the SBA. Allowing setoff would affect a percentage of Subcontractors' right to the Proceeds merely because of the "fortuitous" circumstance rendered especially probable where the competing creditor is an agency of the federal government. This problem is augmented in situations involving the federal government, as here, "given the pervasive nature of government involvement in business (as debtor and creditor)." *See In re Pyramid*, 170 B.R. at 984. Consequently, the government's ubiquitous presence in the market may inflict a unique level of violence to the principles of equity, at least where other creditors' interests are also at risk. In light of these considerations, the court finds that the bankruptcy court did not abuse its discretion in disallowing setoff in the given circumstances.

**3.** In its response brief, Gerson argues that the SBA's secured interest must be limited to the monies remaining after satisfaction of Pyramid's obligations to its subcontractors. Gerson asserts that, because the previously entered Prime Contract required Pyramid to make all payments to subcontractors for work performed under the Prime Contract, Pyramid did not have the property interest in the full future accounts receivables to provide to the SBA through a security agreement and financing statement. However, Gerson cites to no case law even marginally supporting the proposition that a subcontractor's third party beneficiary status for payments under a contract undermine or limit a secured interest

## II. *Equitable Lien.*

■ Regardless of whether or not the Navy has a right to offset its debts, the United States argues that it holds a first priority interest to the Proceeds that is superior to Appellees' interests. In the decision below, the bankruptcy court stated that Appellees did not contest that the United States held a secured interest in the Proceeds.[3] *See In re Pyramid*, 170 B.R. at 977 & 978. As a general matter, Appellees also do not dispute that the government has no obligation to reimburse unpaid subcontractors on government contracts. *See, e.g., Arvanis v. Noslo Engineering Consultants, Inc.*, 739 F.2d 1287, 1289–90 (7th Cir.1984)

Despite acknowledging the United States' secured interest, the bankruptcy court determined that Appellees held a priority interest through an equitable lien. Reviewing *Prairie State Nat. Bank of Chicago v. United States*, 164 U.S. 227, 32 Ct.Cl. 614, 17 S.Ct. 142, 41 L.Ed. 412 (1896), and its progeny *Henningsen v. United States Fidelity & Guaranty Company*, 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547 (1908), *United States v. Munsey Trust Co.*, 332 U.S. 234, 108 Ct.Cl. 765, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947), and *Pearlman v. Reliance Insurance Company*, 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962), the bankruptcy court concluded that unpaid subcontractors generally held an equitable lien to retained funds from a construction contract governed by the Miller Act.[4] In particular, the bankruptcy court adopted the application of this precedent from *United States v. TAC Construction Company*, 760 F.Supp. 590 (S.D.Miss.1991)

in those accounts. *See In re Altek Systems, Inc.*, 14 B.R. 144, 148–49 (Bankr.N.D.Ill.1981).

**4.** The Miller Act, 40 U.S.C. § 270a et seq., governs the rights of subcontractors and suppliers engaged in federal construction projects. *E.g., United States v. Randall & Blake*, 817 F.2d 1188, 1189–90 (5th Cir.1987). The statute requires general contractors on federal projects to furnish payment bonds in favor of subcontractors, 40 U.S.C. § 270a, and provides for a cause of action to recover amounts due under such bonds. § 270b.

to determine the order of priority ranking. *Id.*

Similar to the case at bar, *TAC* involved an unpaid portion of a federal construction contract. The contract was between TAC Construction Company and the Navy. *TAC*, 760 F.Supp. at 593. After deductions for taxes and the costs of alleged uncompleted work, the Navy placed an unpaid portion of the contract in escrow. *Id.*. Numerous subcontractors, suppliers, sureties, and banks asserted their interests in the unpaid contract balance. *Id.* The *TAC* court determined the relative priority to the contract proceeds of the parties, with that of the United States, and concluded that unpaid contractors held a priority through an equitable lien. *Id.* Looking to the Supreme Court precedent and *TAC*, the bankruptcy court determined the following order of interests in the Proceeds: first, the federal government, if the bankruptcy court applies setoff, next, unpaid subcontractors' and sureties; and then secured creditors such as, if no setoff is applied, the federal government. *In re Pyramid*, 170 B.R. at 980.

Appealing this holding, the United States reiterates its prior position that unpaid subcontractors are only entitled to an equitable lien in undisbursed funds from a construction contract if those funds were retained pursuant to a specific contractual provision for the benefit of a specific party.[5] The United States does not dispute that the Supreme Court precedent cited above imposed equitable liens in favor of sureties on government contracts. The United States distinguishes two of these cases, *Prairie Bank* and *Pearlman*, as imposing such liens against funds created by retainage clauses under the contract. These clauses in the construction contracts permitted the government to withhold a portion of the funds to insure that the contractor completed the project to satisfaction. In finding an equitable lien for a surety who had satisfied the obligations to Appellees, *Pearlman* interpreted the prior *Prairie Bank* to find that:

the fund materially tended to protect the surety, that its creation raised an equity in the surety's favor, that the United States was entitled to protect itself out of the fund, and that the surety, by asserting the right of subrogation, could protect itself by resort to the same securities and same remedies which had been available to the United States for its protection against the contractor.

*Pearlman*, 371 U.S. at 137–38, 83 S.Ct. at 235. The United States contrast the instant Prime Contract, which it argues does not provide for the regular retainage of funds for the benefit of itself or third parties.

The United States further relies upon subsequent case law in the Sixth and Seventh Circuit refusing to find equitable liens in favor of subcontractors. In *Indiana Lumbermens Mutual Ins. Co. v. Construction Alternatives, Inc. (In re Construction Alternatives, Inc.)*, 2 F.3d 670 (6th Cir.1993), Indiana Lumbermens Mutual Insurance Company ("Lumbermens"), a surety who paid subcontractors pursuant to a surety bond, and the Internal Revenue Service ("IRS") argued over a priority interest over payments due under an asbestos removal contract for a local school district ("School District") that had been retained in an escrow account. *In re Construction Alternatives*, 2 F.3d at 672–73. In order to defeat the federal tax lien against the contractor, Lumbermens subrogated the rights of both the School District and the subcontractors. Lumbermens argued that both the School District and the subcontractors held an equitable lien in these funds under the same Supreme Court precedent relied upon by the bankruptcy court in the instant case. *Id.*

Although the Sixth Circuit recognized that Lumbermens subrogated these parties' rights to the funds, it held that neither the School District nor the subcontractors would have an equitable lien under the applicable state law of Ohio. First, the Sixth Circuit noted that the construction contract did not

---

5. The United States also refers to such a contractual provision as a "retainage clause," which provides for the customer to retain a portion of the funds payable under the contract to indemnify it for a purpose, such as either the contractor's

failure to complete the work or to complete payments to Appellees, laborers and suppliers. The court views a "retainage fund" as merely an example of the circumstances provided above.

provide the School District with any rights to retain a portion of the contract payments: the contract called for the School District to provide progress payments to the contractor in an amount determined by value of the work completed. *Id.* at 675. But the contract work was completed, and the contract provided the School District with no right to retain funds because the subcontractors had not been paid. *Id.* Moreover, the Sixth Circuit refused to apply *Pearlman* to find an equitable lien in the School District's favor. As the United States argues in this case, the Sixth Circuit distinguished *Pearlman* as involving a contract that permitted the owner to retain a portion of the amount due to insure payment of the suppliers and subcontractors. As the contract at issue only provided for retainage to insure the completion of work, and such work was completed, the Sixth Circuit found that the School District had no equitable rights to unpaid balance which Lumbermens could subrogate. *See id.*

The court next denied Lumbermens claim that it had an equitable lien in the funds through subrogation of the subcontractors' rights. *Id.* at 676. In particular, Ohio statutory law provided subcontractors who filed a mechanics lien with a lien in the underlying property to obtain payment: the filing of the lien obligates the customer to retain a portion of the contract funds to pay subcontractors. If a subcontractor failed to file the lien, Ohio law further directed that the subcontractor had no rights in the fund, including at equity. *See id.*

Applying Illinois law, the Seventh Circuit also recently refused to impose an equitable lien for the benefit of a surety subrogating the rights of subcontractors. *Capitol Indemnity Corp. v. United States*, 41 F.3d 320 (7th Cir.1994). *Capitol* similarly involved a dispute between a surety and the IRS over a progress payment not yet provided under a contract to remove asbestos for a local school district. As in *Construction Alternatives*, the surety argued for a priority based upon its subrogating the rights of the subcontractors. First, the Seventh Circuit noted that the contract did not provide the subcontractors with any lien or rights in the undisbursed progress payment. *Capitol*, 41 F.3d

at 323. Next, the court noted that the subcontractors acquired no lien under statute because they failed to file under the Illinois Mechanics Lien Act. *Id.* Last, the court refused to find any equitable lien in the subcontractors' favor. In a brief analysis reminiscent of *Construction Alternatives*, the Seventh Circuit distinguished precedent interpreting Illinois law to provide equitable liens in favor of subcontractors. *See id.* at 325 (distinguishing *Avco Delta Corp. v. United States*, 484 F.2d 692 (7th Cir.1973)). The court explained that *Avco* only provided the lien "in the context of disputes over retainage fees, which the *Avco* decision described as a sort of 'liquidated damages clause.' " *Capitol*, 41 F.3d at 325 (quoting *Avco*, 484 F.2d at 701). It then contrasted such "[f]unds intended from the inception of the construction contract to settle potential claims" from the undisbursed progress payments merely owed to the contractor under the contract. *Id.*

In rejecting the United States' proposed restriction on equitable liens, the bankruptcy court distinguished *Construction Alternatives* and *Capitol* as involving federal construction contracts not governed by the Miller Act. Each of those decisions considered disputes over funds on contracts that did not involve federal construction projects. Consequently, the existence of any creditor's equitable interest in undisbursed funds was governed solely by state law. To protect subcontractors, states have enacted statutes which preempt common law and permit subcontractors to file with the state. Such a filing obligates the property owner to retain a portion of the payments on the contract on behalf of the filing subcontractor, effectively unilaterally creating a retainage fund in that subcontractor's favor. In *Construction Alternatives* and *Capitol*, the subcontractors at issue had not complied with the state statute, leaving the subcontractor, or surety subrogating the rights of the subcontractor, with no state law rights in the undisbursed funds.

In the context of contracts for federal projects, however, sovereign immunity prevents subcontractors from attaching liens to federal property. *See F.D. Rich Co. v. United States*, 417 U.S. 116, 122, 94 S.Ct. 2157, 2161–

62, 40 L.Ed.2d 703 (1974). Consequently, subcontractors have no access to the protection of statutory liens in contracts governed by the Miller Act. Appellees contend that this provides the critical difference which would explain the TAC court's decision to provide an equitable lien in undisbursed finds, despite never referring to the existence of a retainage or similar clause in the construction contract creating any sort of indemnity fund.

The court agrees with the bankruptcy court that the circumstances of this case warrant the imposition of an equitable lien in the Appellees' favor. The United States accurately observes that at least two of the three Supreme Court precedent addressing this matter, *Prairie State* and *Pearlman*, imposed equitable liens in funds that were created pursuant to retainage clauses. But these decisions never specifically limited their holdings to this fact. Furthermore, the decision in *Henningsen*, at best, never refers to a retainage clause or fund and appears to merely involve an unpaid balance on a federal construction project. *See Henningsen*, 208 U.S. 404, 28 S.Ct. 389. Consequently, Supreme Court precedent provides limited direction on this question.[6]

Ultimately, the principle distinction between precedent expressly requiring a retainage clause and the instant dispute is the presiding law of the Miller Act. Because the Appellees worked on a federal project, they could not protect themselves by attaching any state imposed liens on the underlying property. In recognition of this predicament, Congress enacted the Miller Act to provide an alternative remedy for their protection. *See, e.g., Active Fire Sprinkler Corp. v. USPS*, 811 F.2d 747, 755 (2d Cir. 1987); *United States v. Ideal Electronics Sec. Co.*, 868 F.Supp. 10 (D.D.C.1994). But the Miller Act provides only "a very narrow and specific right to sue on the bond (if there happens to be one)." *Arvanis*, 739 F.2d at 1289. It does not provide subcontractors with any cause of action against the United States as a party to the construction contract, even where the United States permits the general contractor to violate the statute and engage in a federal project without obtaining the required payment bond. *See id.* at 1289–90. Apparently, in the present case, the United States failed to insure that Pyramid obtain a payment bond to protect the Appellees. Consequently, this circumstance left the Appellees stranded in a gap in the protection provided by the statute.

The decisive question is whether the Miller Act implies an equitable remedy in such circumstances. In light of the narrow remedy against the surety granted by the statute, the United States could argue that the court should not provide any further remedy in the subcontractors' favor, even at equity. However, the court has only located precedent to read the Miller Act to preclude further rights against the United States as the owner of the project. *See Active Fire*, 811 F.2d at 754–55.

**6.** In contrast to the bankruptcy court, however, the court declines to rely upon the Seventh Circuit's broad dictum in *Avco* as implying that it would favor equitable liens in the present circumstances:

"Laborers and materialmen, however, have an equitable right to payment from funds due a contractor on a public improvement in preference of general creditors. ... There is a recognized equitable right of unpaid furnishers of labor or materials to such part of the contract price as may remain in the possession of the government after the completion of the work by the contractor."

*Id.* (quoting *United States Fidelity & Guaranty Co. v. Sweeney*, 80 F.2d 235, 238 (8th Cir.1935) and citing *Theatre Realty Co. v. Aronberg–Fried Co.*, 85 F.2d 383, 388 (8th Cir.1936)).

Despite this broad language, *Avco* considered the application of an equitable lien "insofar as a retainage fund was concerned." *Avco*, 484 F.2d

at 703; *see id.* at 704 & 705. Therefore, these brief statements, surrounded with little analysis, do not convince this court that the Seventh Circuit would not interpret Illinois law to require the existence of some sort of retainage clause to impose an equitable lien. Furthermore, while *Avco* subsequently provided these statements of unpaid laborers rights, both of the Eighth Circuit decisions quoted for those principles addressed claims in funds retained or specifically set aside under the terms of the construction contract for the purpose of insuring the completion of the work and payment for all labors and supplies. *See Theatre Realty*, 85 F.2d at 388; *Sweeney*, 80 F.2d at 236 & 239. In fact, the analysis followed in *Theatre Realty* particularly focused on the fact that the monies had been set aside in a trust for the intended purpose of providing payment to the party seeking the lien. *See Theatre Realty*, 85 F.2d at 388–89.

The court has located no law indicating that the Miller Act weighs against the provision of rights vis-a-vis other creditors of the general contractor. The Miller Act is premised on "the equity in favor of those whose actual expenditure of work or utilization of material has enhanced the value of the property in question." *United States v. Piracci Constr. Co.*, 405 F.Supp. 904, 907 (D.D.C.1975) (quoting *Arthur N. Olive Co. v. United States*, 297 F.2d 70, 72 (1st Cir.1961)). Where the United States has failed to insure the proper protection to subcontractors directed by the statute, the equities favor the interests of unpaid subcontractors in the remaining balance owed under the contract due to the general contractor. *See Active Fire*, 811 F.2d at 754–55; *Kennedy Electric Co., Inc. v. USPS*, 508 F.2d 954, 958–59 (10th Cir.1974). As the subcontractors have no access to state laws providing for liens or devices to create retainages, equity favors the court treating the balance due on the federal contract in such circumstances as retainage, and recognizing an equitable lien in that balance as against other creditors.

The United States responds that *Pearlman* refused to find that "the rule laid down in [*Prairie State* and *Henningsen*] had been changed by the passage of the Miller Act." *Pearlman*, 371 U.S. at 140, 83 S.Ct. at 235. As noted above, however, it is not at all clear that granting the lien sought to alter the equitable doctrine of *Prairie State* and *Henningsen*. Furthermore, the United States reads too much into *Pearlman*. The Supreme Court rejected the argument that the Miller Act "intended to repudiate equitable principles ... as those spelled out in the *Prairie Bank* and *Henningsen* cases." *Pearlman*, 371 U.S. at 140, 83 S.Ct. at 236. Thus, *Pearlman* held that the equitable rights of subcontractors and sureties survived the passage of Miller Act. It did not address whether the Miller Act may further weigh in subcontractors' favor.

### CONCLUSION

For the reasons set forth above, the decision of the bankruptcy court is affirmed.