### In re LYKES BROS. STEAMSHIP CO., INC., Debtor.

#### Bankruptcy No. 95–10453–8P1.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Nov. 10, 1997.

---

1. *See* § 111 of Pub.L. 104–99 Stat. 26.

2. The Court would note that the Appellee C N' B of Florida has not filed a brief.

**306**

Harley Riedel, Russell M. Blain, Tampa, FL, for Debtor.

Frances M. Toole, Lacy R. Harwell, Jr., U.S. Dept. of Justice, Civil Div., Commercial Litigation Branch, Washington, DC, for U.S.

Mindy A. Mora, Paul S. Singerman, Miami, FL, for Official Unsecured Creditors Committee.

Charles R. Wilson, Asst. U.S. Atty., Tampa, FL.

Joe Freeman, Tampa, FL, trustee.

## ORDER ON MOTION TO EXERCISE ADMINISTRATIVE OFFSET AND CROSS-MOTION TO ENFORCE THE PROVISIONS OF THE CONFIRMATION ORDER

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a confirmed Chapter 11 case and the matter under consideration is the Motion to Exercise Administrative Offset filed by the United States of America (Government) and the Debtor's Objection and Cross–Motion to Enforce the Provisions of the Confirmation order. In its Motion, the Government contends that it is entitled to setoff the claims of the Commodity Credit Corp. (CCC) in the amount of $2,401,377.89; the Internal Revenue Service (IRS) in the amount of $225,056.50; and the U.S. Customs in the amount of $51,202.62 against the Debtor's claim against a maritime subsidy due and owing by the Maritime Administration, Dept. of Transportation (MarAd) to the Debtor in the amount of $2, 832, 711.00. The Debtor concedes that both the IRS and the U.S. Customs are entitled to setoff their claims, but vigorously opposes any attempt to setoff the claim of CCC. The facts relevant to the matters under consideration as they appear from the record are without dispute and are as follows:

Prior to the commencement of this Chapter 11 case, and for several years before, the Debtor was, as were other U.S. Flag Carrier Vessels, the recipient of a subsidy paid by MarAd pursuant to an Act of Congress (Title II of the Agricultural Trade Development and Assistance Act of 1954, as amended, known as Title II, Public Law 480). The subsidy was designed to assist U.S. Flag Carrier Vessels to compete with foreign Flag Carrier vessels by paying eighty percent of the difference between what the U.S. Carriers have to pay to their crews and what the foreign Flag Carriers pay to theirs. In the past, the subsidy was paid after the Debtor submitted its request for payment upon the completion of each voyage.

It is without dispute that at the commencement of the case MarAd agreed to continue to pay the subsidy to the Debtor with the proviso that the Government's right to a setoff be preserved. Pursuant to the Agreement approved by this Court on October 26, 1995, the Government paid the subsidy in accordance with the invoices submitted for the balance of the year 1995 and during the pendency of this Chapter 11 case.

In due course, MarAd audited the invoices submitted by the Debtor and determined

that MarAd was, in fact, indebted to the Debtor. At the request of a U.S. Senator, the Inspector General was directed to conduct a second audit of the invoices submitted by the Debtor. This audit also determined that the Debtor was entitled to an unpaid subsidy in the amount of $2,832,711.00. Thus, this amount is no longer in dispute and is admitted by MarAd to be due and owing to the Debtor.

On February 16, 1996, this Court entered an Order establishing the bar date which required the filing of all proofs of claim on or before April 5, 1996. On March 28, 1996, CCC timely filed Proof of Claim No. 1278 in the amount of $2,631,160.37. The claim was filed as a general unsecured claim and included a statement that the claim was not subject to any setoff.

It should be noted that the Military Sealift Command (MSC), an agency of the Government also filed a proof of claim, Claim No. 949, in the amount of $702,885.00. Unlike CCC, however, MSC filed its claim as a secured claim, listing accounts payable as its collateral. The accounts payable listed on this proof of claim represented the monies which MSC owed to the Debtor on account of cargo delivered by the Debtor. The IRS also filed a secured claim in the amount of $225,056.50, asserting both a right to setoff the amount of $17,378.97, and a security interest based on the Government's right of offset against any claims the Debtor may have against the United States. The U.S. Customs filed a proof of claim, also asserting a right of setoff.

On February 24, 1997, CCC filed its amended proof of claim (Amended Claim) which for the first time contained the language intimating that the Government intends to assert a right of setoff. The Amended Claim, filed almost a year after the bar date, reduced CCC's claim to $2,401,-377.89. Unlike the initial claim, the Amended Claim asserted that CCC has a right of setoff as to the $5,338.48 which was owed to Lykes by CCC. The Amended Claim stated, just as did the original claim, that CCC is entitled to share in the distribution as an unsecured creditor under the Plan. In addition to identifying the setoff claim of $5,338.48, it also stated that this was without prejudice to the right of CCC to setoff against other amounts owed to Lykes.

On February 13, 1997, the Debtor filed its first Plan of Reorganization. The original Plan filed by the Debtor was the result of intensive negotiations with the major creditors which culminated in an agreement by Morgan Bank Group to accept $13.5 million only on its $27 million plus secured claim. Mitsui Engineering & Shipbuilding Co., Ltd. (Mitsui) and Mitsubishi Heavy Industries, Ltd. (Mitsubishi), holders of preferred ship mortgages in the Pacific Class vessels, also agreed to take less than one-half of their total of $70 million. This Plan provided $500,000 for unsecured creditors and an additional $500,000 in insurance benefits to tort claimants, including cargo claims.

The original Plan specifically identified the claimants which the Debtor believed to be entitled to a right of setoff pursuant to 11 U.S.C. § 553. Those claimants identified as asserting setoff rights were classified as Class 5 creditors. CCC was not among the creditors whose setoff rights were recognized by the Debtor. The Debtor placed the claim of CCC in Class 17 as a tort claim.

The operative language of the original Plan provided,

> ... Persons or Entities that have held, currently hold or may hold a Claim or other Debt, Liability or Equity Interest that is discharged pursuant to the terms of the Plan are and shall be permanently enjoined and forever barred to the fullest extent permitted by law from taking any of the following actions on account of any such discharged Claims, Debts, Liabilities or Equity Interests ... (d) asserting a setoff, right of subrogation or recoupment of any kind against any Debt, Liability or obligation due to the Debtor, the Reorganized Debtor, the Reorganization Trusts, any of the CPL Entities or their respective Properties, including the Acquired Assets, the Vessels and the Excluded Assets ...

Original Plan, Article 11.4.

As was expected, the Debtor received numerous objections to the Disclosure Statement and also to the original Plan. The Government was among those who filed an

objection to the Disclosure Statement. Its objection was based solely on the description of the approvals required by MarAd for the transactions contemplated under the Plan. The Government did not object to the Plan provisions which prohibited setoff. CCC filed no objection to the Disclosure Statement and no issue was raised at the hearing to the provision which prohibited any setoff. This Court approved the Disclosure Statement and scheduled a confirmation hearing which provided that all objections to confirmation shall be filed by March 24, 1997 and all ballots for or against the Plan shall be filed no later than March 28, 1997.

To comply with certain objections, the Debtor filed an Amended and Restated Disclosure Statement together with a First Amended Plan of Reorganization (Amended Plan), which again prohibited the exercise of post-confirmation setoff rights. On March 24, 1997, the Government asserted two objections to confirmation of the Amended Plan. The first objection was served on behalf of MarAd and MSC and related to the requirement of the Plan that the consummation of the Amended Plan depended on approval by MarAd to continue to pay the subsidy described earlier. The second objection by the Government was filed on behalf of the IRS which correctly noted that the Amended Plan did not make provision for the retention of any setoff claim of the IRS. No government entity, other than the IRS, urged the right of setoff. It is without dispute that CCC did not raise the right of setoff. On March 28, 1997, CCC filed a non-voting ballot as a Class 17 unsecured tort claimant.

This Court, having heard arguments of counsel on the objections of MarAd and MSC, overruled both objections and entered its Order confirming the Amended Plan on April 15, 1997. It is without dispute that the closing of the asset purchase agreement which was the basis of the First Amended Plan was dependant upon the ongoing subsidy payments by MarAd and approval of MarAd and MSC. The Order of Confirmation expressly recognized again the right of the IRS, specifically, to exercise its right of set-

off in the amount of, or no more than, $225,-056.50.

Notwithstanding vigorous efforts by the Debtor, MarAd, largely based on the objection to the continuing payment of subsidies by SeaLand Service, Inc. (SeaLand), one of the Debtor's largest competitors, issued its ruling on June 20, 1997. The ruling denied approval of the continuation of subsidies if the First Amended Plan was consummated by asset sales to Canadian Pacific Limited (Canadian Pacific) or its wholly-owned subsidiaries. Obviously the ruling of MarAd left the Debtor and other plan proponents, Blue Water and Canadian Pacific, with the option of either (a) abandoning the entire transaction; or (b) quickly restructuring the transaction without future subsidy payments. Despite the economic impact of the adverse decision of MarAd, which was in excess of $60 million over several years, Blue Water and Canadian Pacific announced they were prepared to go forward without a subsidy provided, however, that certain additional required issues be resolved and that the Debtor be able to attain additional economic concessions from the principal parties of interest. As a result of negotiations, Mitsui and Mitsubishi agreed to a further reduction of its claim in the amount of $3.9 million; The Morgan Bank Group agreed to a reduction in the amount of $675,000; the administrative and priority claimants agreed to a reduction in the amount of $345,000; and the three major container lessors agreed to a reduction in the approximate amount of $1 million.

The parties have raised the following arguments in support of their respective positions related to the Government's right to setoff. The Government contends that (1) the April 15, 1997 Confirmation Order was a conditional order, which condition remained unfulfilled, and that, therefore, the April 15, 1997 Confirmation Order which approves the provision precluding setoff, does not have a *res judicata* effect barring the Government's assertion of its setoff rights; (2) as a matter of law, setoff rights under 11 U.S.C. § 553 survive confirmation of a plan of reorganization without the need for objecting to the plan in order to preserve those rights; (3) CCC's

original and amended proofs of claim preserved rather than waived CCC's setoff rights; (4) the entities and agencies of the Government are a unitary creditor for purposes of meeting the "mutuality" requirement of setoff; and (5) equitable considerations are not part of the requirements for setoff under 11 U.S.C. § 553, and even if they are, CCC satisfies the test.

The Debtor, on the other hand, contends that (1) the April 15, 1997 Confirmation Order is a final, non-appealable order which eliminated all setoff rights of the Government, except for those of the IRS in the maximum amount of $25,000; (2) the CCC waived any secured claim or setoff claim by, among other things, filing a general unsecured claim and a nonvoting ballot as an unsecured creditor; (3) the Government has no right of setoff as between the claims of different entities or agencies, and the proposed claims to be setoff are not otherwise mutual; and (4) fairness dictates that this Court exercise its discretion to deny the right of setoff in this matter.

## WHETHER THE GOVERNMENT MAY MEET THE MUTUALITY REQUIREMENT OF SETOFF USING THE CLAIMS OF DIFFERENT GOVERNMENT ENTITIES OR AGENCIES?

 In order for a creditor to offset the amount due from a debtor, the creditor's claim must meet the following requirements: (a) the amount owed by the debtor must be a pre-petition debt; (b) the debtor's claim against the creditor must also be pre-petition; and (c) the debtor's claim against the creditor and the debt owed the creditor must be mutual. *See In re Ionosphere Clubs, Inc.,* 164 B.R. 839 (Bankr.S.D.N.Y.1994) (citation omitted). The requirement at issue in the instant case is whether the government may meet the mutuality requirement in offsetting CCC's claim against the Debtor by amounts due by MarAd to the Debtor.

The Debtor points to bankruptcy court decisions which have narrowly construed the mutuality requirement and have concluded that the claims of different agencies of the United States are not mutual. *See e.g. In re*

*Art Metal U.S.A., Inc.,* 109 B.R. 74 (Bankr. D.N.J.1989) (Pension Benefit Guarantee Corporation, a separate corporation although created by the government did not meet mutuality requirement with the United States Postal Service); *In re Ionosphere Clubs, supra.* The United States Supreme Court, however, held that all federal government agencies are deemed a single unit for purposes of setoff in a non-bankruptcy case. *Cherry Cotton Mills v. United States,* 327 U.S. 536, 105 Ct.Cl. 824, 66 S.Ct. 729, 90 L.Ed. 835 (1946). In the bankruptcy context, the Ninth and Tenth Circuit Courts of Appeal considered interagency setoff under 11 U.S.C. § 553 and held that federal government agencies are treated as a single government unit for purposes of setoff under 11 U.S.C. § 553. *See In re Hal, Inc.,* 122 F.3d 851 (9th Cir.1997); *In re Turner,* 84 F.3d 1294 (10th Cir.1996) (en banc), on remand 96 F.3d 465 (10th Cir.1996). Although the Eleventh Circuit Court of Appeals has not ruled on this issue, this Court finds that the Government is a unitary creditor for purposes of satisfying the requirement of mutuality under Section 553.

Having concluded that the Government's right to offset amounts due to and from different agencies is available, this Court turns to the issue of whether the confirmed Plan operates as a complete bar to recovery based upon the doctrine of *res judicata.*

## WHETHER THE GOVERNMENT'S SETOFF RIGHTS ARE BARRED BY RES JUDICATA?

 The Debtor's Plan enjoins any creditor from "asserting a setoff, ... of any kind against any debt, ... due to the Debtor, the Reorganized Debtor, the reorganization trusts, any of the Canadian Pacific entities or their respective properties, including the acquired assets, the vessels, and the excluded assets." Plan, Art. 11.4. The Debtor contends that because CCC filed an unsecured claim, filed a ballot as an unsecured creditor, albeit nonvoting, failed to object to those Plan provisions prohibiting setoff except in those instances where the Debtor was able to identify those claimants asserting setoff rights, and because the Plan was confirmed

and no appeal was taken, the CCC's assertion of its setoff rights is barred by *res judicata*. The Government, on the other hand, contends that a plan of reorganization cannot abrogate setoff rights because setoff rights survive confirmation. Further, even if a plan could prohibit the assertion of setoff rights, in this case, the April 15, 1997 Confirmation Order was not a final order to which the doctrine of *res judicata* applies.

Section 553 provides, in relevant part, "except as otherwise provided ..., this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor." 11 U.S.C. § 553(a). Section 1141(a) provides in pertinent part, "except as otherwise provided ..., the provisions of a confirmed plan bind ... any creditor ..., whether or not the claim or interest of such creditor ... is impaired under the plan." 11 U.S.C. § 1141(a). A fair reading of these two Code Sections leaves no doubt that facially they are in conflict and require a consideration of which of the two shall prevail over the other. The difficulty lies in the two competing policies of "(1) not requiring a creditor to disgorge an asset in its possession belonging to a debtor who still owes it money, and (2) facilitating a reorganization found to be in the interest of all creditors by mandating such a disgorgement ." *United States v. Driggs,* 185 B.R. 214 (D.Md.1995) Under the facts of this case, especially in light of the CCC's failure to assert its setoff claim until after confirmation, this Court concludes that facilitating the reorganization process is the overriding policy in this case and that, therefore, the provisions of Section 1141 take precedence over Section 553. Having reached this conclusion, it is appropriate to consider whether Government's setoff claim is barred by the doctrine of *res judicata.*

■ The doctrine of *res judicata* or claim preclusion applies to an order or judgment when the following four conditions are satisfied,

> First, the prior judgment must be valid in that it was rendered by a court of competent jurisdiction and in accordance with the requirements of due process.... Second, the judgment must be final and on the merits.... Third, there must be identity

of both parties or their privies.... Fourth, the later proceeding must involve the same cause of action as involved in the earlier proceeding.

*In re Justice Oaks II, Ltd.,* 898 F.2d 1544, 1550 (11th Cir.1990) cert. denied 498 U.S. 959, 111 S.Ct. 387, 112 L.Ed.2d 398 (1990). No one disputes that this Court had jurisdiction to enter the April 15, 1997 Confirmation Order and that it was entered in accordance with due process. Further, no one disputes that the CCC was a party to the confirmation proceeding and that it had a full and fair opportunity to raise its objection. *See Justice Oaks II, Id.* at 1550–1551 ("A party, for the purposes of former adjudication, includes 'all who are directly interested in the subject matter and who have a right to make defense, control the proceedings, examine and cross-examine witnesses and appeal from the judgment if an appeal lies.' "). With respect to the fourth requirement, the confirmation proceeding, in part, dealt with those provisions of the Plan which prohibited the assertion of setoff rights except in those specific instances where the Debtor had specifically identified claimants asserting setoff rights. Thus, the Government's claim for setoff involves one of the same claims at issue at the confirmation proceeding.

■ With respect to the second requirement, it is recognized that the entry of an order of confirmation constitutes a final judgment with *res judicata* effect. *Stoll v. Gottlieb,* 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938). *Justice Oaks II, supra* at 1552; *See In re Varat Enterprises, Inc.,* 81 F.3d 1310 (4th Cir.1996). The Confirmation Order "is an absolute bar to the subsequent action or suit between the same parties ... not only in respect of every matter that was actually offered and received to sustain the demand, but also as to every [claim] which might have been presented." *Justice Oaks II, supra* at 1552.

On April 15, 1997, the Court entered its Order confirming the Plan. It is without dispute that the Government did not object to confirmation and did not appeal the April 15, 1997 Confirmation Order. This Court is satisfied that the Government is bound by the terms of the confirmed Plan. This is so, even

though CCC did not vote to accept it, *In re Holywell Corp.*, 93 B.R. 780, 783 (S.D.Fla. 1988) affirmed *Miami Center v. Bank of New York*, 881 F.2d 1086 (11th Cir.1989), cert. denied 493 U.S. 1057, 110 S.Ct. 867, 107 L.Ed.2d 951 (1990); *See also In re General Development Corp.*, 84 F.3d 1364, 1370 (11th Cir.1996), and although the Plan ultimately provides CCC with less than that to which CCC might have been otherwise entitled. *Holywell, supra* at 783, quoting *In re St. Louis Freight Lines, Inc.*, 45 B.R. 546, 552 (Bankr.E.D.Mich.1984).

Nonetheless, the Government contends that its assertion of its setoff rights is not barred by the doctrine of *res judicata* because the Plan, as approved by the April 15, 1997 Confirmation Order, was conditioned upon MarAd approval of certain transfers of subsidy rights to the reorganized Debtor. Since MarAd declined those approvals, the Government contends that the condition went unfulfilled, so that the April 15, 1997 Confirmation Order never became final.

█ Contrary to the Government's position, however, the April 15, 1997 Confirmation Order is a final order which is to be accorded full *res judicata* effect. While it is true that the Order of Confirmation was subject to a condition subsequent, the availability of the MarAd subsidy, this only effected the feasibility of the Plan but had no impact on the terms of the Plan dealing with the treatment of allowed claims. The availability of the MarAd subsidy was of no consequence to the other Plan provisions or the Order of Confirmation. Clearly, the Order was final because it no longer required any judicial intervention to deal with the confirmation process. The fact that the Debtor's Plan was modified does not change the *res judicata* effect of the April 15, 1997 Confirmation Order. 11 U.S.C. § 1127(b); *In re Attalla Golf and Country Club, Inc.*, 181 B.R. 611, 615 (Bankr.N.D.Ala.1995) ("Congress intended § 1127(b) ... as a device to adjust the plan to changed circumstances after confirmation not as a means to collaterally attack a final order"). The Amended Confirmation Order entered by this Court on July 17, 1997, states,

> The April 15 Confirmation Order was not subject of any timely-filed appeal and is now final. The Amended and Restated Third Modification represents a narrow and limited modification of the Original Plan, and nothing herein suggests that any unchanged provisions of the April 15 Confirmation Order are being modified or ruled on anew. This Confirmation Order is intended, however, top incorporate in one single order all of the Confirmation rulings, whether part of the April 15 confirmation Order or whether relating to the Amended and Restated Third Modification.
>
> . . .
>
> The April 15 Confirmation Order is a final and nonappealable order. Except as expressly modified by this Confirmation Order, the April 15 Confirmation Order remains in full force and effect.

Amended Confirmation Order, at pp. 2, 15.

Furthermore, the Debtor and the Government, specifically the IRS, negotiated language for the Confirmation Order which preserved the Government's right of setoff with respect to the IRS. That language, which was included in the Confirmation Order entered by this Court, provides,

> ORDERED, ADJUDGED, AND DECREED that, with respect to the plan obligation of the United States of America on behalf of the Internal Revenue Service, confirmation of the modified plan does not affect any right of the United States to setoff no more than $225,056.50 on account of its claim alleged in its plan objection, without prejudice to the right of the purchaser, the Debtor, the Reorganized Debtor, or any other party to contest the amount of the claim should the United States exercise such right of setoff.

Confirmation Order, p. 79–80.

The doctrine of *res judicata* clearly applies to the April 15, 1997 Confirmation Order and, therefore, in accordance with the provisions of the confirmed Plan, the Government is precluded from asserting its setoff rights.

## WHETHER CCC WAIVED ITS SETOFF CLAIM BY FILING A GENERAL UNSECURED CLAIM AND A BALLOT AS AN UNSECURED CREDITOR?

Even considering, without concluding that the Government's right to setoff was not

barred by *res judicata*, this Court would still have to consider the issue of whether the Government waived its right to setoff. The Government contends that there is no need to assert a setoff right in a proof of claim. The Debtor, on the other hand, contends that a right to setoff is a claim that must be filed in order to preserve it.

In its proof of claim, a creditor "must indicate the amount of its claim and the extent which it is secured or unsecured." *In re 183 Lorraine Street Assoc.*, 198 B.R. 16, 26 (E.D.N.Y.1996). The filing of a proof of claim without asserting a setoff right constitutes a waiver of that right. *In re Gehrke*, 158 B.R. 465, 468 (Bankr.N.D.Iowa 1993) (citation omitted); *In re Aquasport, Inc.*, 115 B.R. 720, 721–722 (Bankr.S.D.Fla.1990), aff'd. 155 B.R. 245 (S.D.Fla.1992), aff'd. 985 F.2d 579 (11th Cir.1993). Further, a party may waive its right to setoff by failing to timely assert it and if a creditor provides information that its claim is not subject to setoff and the debtor relies on that information to his detriment, then the right to setoff may be waived. *In re Apex International Management Services, Inc.*, 155 B.R. 591, 595 (Bankr.M.D.Fla.1993), aff'd. 1996 WL 172210 (M.D.Fla.1996). This is exactly the situation in which the parties find themselves now.

CCC's initial Claim states,

14. CCC is entitled to participate in the distribution of any funds available as an unsecured nonpriority creditor;

15. No security interest is held in these claims;

16. These claims are not subject to any setoff or counterclaim;

17. The filing of this proof of claim is not to be construed as a waiver of the rights of the United States or CCC to follow any of its property or the proceeds thereof into anyone's hands, or as a waiver of any other rights or claims whatsoever;

. . .

21. This claim reflects the known liability of the petitioner in this matter to this agency of the United States. The United States reserves the right to amend this proof of claim to assert liabilities subse-

quently discovered or determined for any other reasons heretofore unknown; . . .

The Debtor relied to its detriment on the information contained in CCC's proof of claim. This conclusion is obvious from the Debtor's classification of specific creditors. Based upon information known the Debtor, the Debtor identified all known claimants asserting setoff rights and placed them in Class 5. Based upon the information in CCC's initial claim, the Debtor identified CCC as a Class 17, unsecured tort claimant. CCC did nothing, until after confirmation, to assert its right to setoff. This Court, therefore, is satisfied that by filing the proof of claim as unsecured and by failing to object to confirmation of the Plan which treats its claim as unsecured, CCC waived its right to setoff. *See In re Village Craftsman, Inc.*, 160 B.R. 740, 748 (Bankr.N.J.1993); *See also In re United Marine Shipbuilding, Inc.*, 198 B.R. 970, 978 (Bankr.W.D.Wash.1996) (Right of setoff waived by conduct inconsistent with exercising right of setoff.)

Based upon the foregoing, even if the April 15, 1997 Confirmation Order is not *res judicata*, this Court finds that throughout the entire reorganization process, the Government acted inconsistently with its exercise of its setoff rights, the Debtor detrimentally relied upon the information supplied by the Government, and, therefore, the Government waived its right to setoff.

The Government, however, contends that its setoff right was not waived because the initial proof of claim was amended by the Amended Claim which relates back to the date of the initial claim. The Amended Claim dated December 12, 1996 and filed on February 24, 1997 provides, in pertinent part,

12. . . . These unpaid freight bills owed the debtor are held subject to setoff against CCC's claim; . . .

21. This claim reflects the known liability of the petitioner in this matter to this agency of the United States. The United States reserves the right to amend this proof of claim to assert liabilities subsequently discovered or determined for any other reasons heretofore unknown. The

identification of any sums held subject to setoff is without prejudice to any other right under 11 U.S.C. § 553 to set off, against this claim, debts owed to debtors by this or any other federal agency; ...

The Government, by its Amended Claim, inappropriately seeks to change the status of the claim for the first time from unsecured to secured. *See In re Wrenn Insurance Agency of Missouri, Inc.,* 178 B.R. 792, 798–799 (Bankr.W.D.Mo.1995). Claimants asserting setoff rights are treated as secured claimants pursuant to § 506 of the Bankruptcy Code. *See In re National Merchandise Co., Inc.,* 206 B.R. 993, 999 (Bankr.M.D.Fla.1997). The secured claim cannot relate back to the initial claim and is a new claim which is barred by the bar date. *In re Alliance Operating Corp.,* 60 F.3d 1174, 1175 (5th Cir.1995); ; *In re W.F. Monroe Cigar Co.,* 166 B.R. 110, 112–113 (N.D.Ill.1994).

## WHETHER THIS COURT SHOULD EXERCISE ITS DISCRETION TO DENY THE RIGHT OF SETOFF IN THIS CASE?

■ Even assuming without concluding that in theory the Government is entitled to assert a right of setoff, this Court still has the discretion to prohibit the Government's exercise of setoff for equitable reasons. *See In re Securities Group 1980,* 74 F.3d 1103, 1114 (11th Cir.1996) (Bankruptcy courts have the discretion to deny setoff on equitable grounds.); *See also U.S. v. Norton,* 717 F.2d 767 (3rd Cir.1983) As stated in *In re Pyramid Industries, Inc.,* 210 B.R. 445 (N.D.Ill. 1997),

As noted, section 553 does not require the bankruptcy court to allow or disallow a setoff. In fact, the bankruptcy court must exercise its equitable discretion in deciding to allow or disallow a setoff under section 553. See *In re Lakeside,* 151 B.R. [887] at 890 [(N.D.Ill.1993)]. The bankruptcy court should not automatically enforce the right merely because it is permitted under the Bankruptcy Code. *Id.* (citing *In re Elcona Homes Corp.,* 863 F.2d [483] at 484–85 [(7th Cir.1988)]),

*Id.* at 451–452.

■ Setoff may be denied where the creditor acted inequitably; where the setoff would jeopardize the debtor's ability to reorganize; or in a liquidation context where the setoff would result in either a preference or priority over other unsecured creditors. *Pyramid Industries, supra* at 451–452.

■ Here, prebankruptcy, thousands of other shippers utilized the Debtor's vessels to ship cargo, resulting in claims for cargo loss or damage upon the Chapter 11 intervention. The cargo loss claims of all of the other shippers are dealt with in the confirmed Plan as either Class 16 general unsecured or Class 17 tort claims, providing for payment of only a portion of their claims. During the Debtor's Chapter 11 case, CCC acted the same as other unsecured cargo claimants by filing an unsecured claim, casting a nonvoting ballot as an unsecured creditor, and failing to object to the Plan provisions which prohibit setoff. The Debtor contends, and this Court agrees, that if CCC, as a commercial shipper, is allowed to setoff its claim, CCC would be unfairly favored over other commercial shippers who are also creditors.

In addition, this reorganization came to fruition only because of the substantial concessions made by parties who otherwise, under applicable law, would have been entitled to full payment or substantially more superior treatment than they are receiving under the confirmed Plan. All of the major players tried so hard to achieve a consensus and assist in the successful reorganization of the Debtor. Had these parties known that the Debtor's $2,832,711.00 claim against MarAd would be completely eliminated if setoff were permitted, these parties might not have been willing to make their substantial concessions in their effort to save the Debtor, which in turn would have had a serious negative impact on the reorganization process.

Based on the foregoing, this Court is satisfied that first, the April 15, 1997, Order of Confirmation effectively bars the setoff claim of the Government based on the doctrine of *res judicata;* second, that the Government waived the right to setoff by its conduct; and, third, it would be inequitable in any

event to permit the Government to use setoff under the facts established by this record.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the United States of America's Motion to Exercise Administrative Offset be, and the same is hereby denied. It is further

ORDERED, ADJUDGE AND DECREED that the Debtor's Objection to the United States of America's Motion to Exercise Administrative Offset be, and the same is hereby sustained. It is further ORDERED, ADJUDGED AND DECREED that the Debtor's Cross–Motion to Enforce the Provisions of the Confirmation Order be, and the same is hereby granted.